HARRIS & MITCHELL *v.* THE AMOSKEAG LUMBER CO.

1. While all of the record admitted in evidence at the instance of the defendant may not have been pertinent, yet as much of it was both material and relevant, the court did not err in overruling a general objection to its admissibility.

2. Where letters in evidence, plain and unambiguous in their terms, clearly and distinctly indicated a purpose on the part of the writer, the defendant's general manager, to make a contract with the plaintiffs, who were the persons addressed, it was error to allow the former to testify: "It was not my purpose to trade with them [plaintiffs] by writing these letters." This error, in view of the entire record, is cause for a new trial.

3. A complete and binding contract may be made by means of an epistolary correspondence, but this result is not accomplished until there has been a definite offer by one of the parties to the correspondence, and an unequivocal acceptance of it by the other, without condition or variance of any kind. The parties must "mutually assent to the same thing in the same sense."

4. Although, in the present case, the correspondence between the plaintiffs and the defendant did not, of itself, amount to a fully completed and binding contract, if, in point of fact, the parties so treated and regarded it, and if, in consequence, the plaintiffs relinquished to the defendant their claim to certain timber and the latter cut and used the same, it is bound to pay to the plaintiffs the price thereof as stated in the letters, unless it shows affirmatively that they did not really own the timber, but that the paramount title thereto was in another, or others, claiming adversely to the plaintiffs.

5. The charges excepted to, in which the court stated to the jury the respective contentions of the parties, are not erroneous; some of the other charges complained of are not entirely free from criticism, but they contain nothing which would require the granting of a new trial; and there would be no reversal of the judgment below but for the error first above indicated.

October 28, 1895.

Action on contract. Before Judge Smith. Dodge superior court. March term, 1895.

*Steed & Wimberly* and *J. E. Wooten*, for plaintiffs.
*E. A. Smith* and *D. M. Roberts*, for defendant.

LUMPKIN, Justice.

This was an action by Harris & Mitchell against the Amoskeag Lumber Company for the price of the timber on certain lots of land, which the plaintiffs claimed they had sold to the defendant and which the latter had cut and used. The declaration alleged that the contract of sale was in writing, evidenced by a correspondence which had taken place between the plaintiffs and the defendant. It is unnecessary to set out in full the letters constituting this correspondence. It is sufficient to say that those written by the defendant's general manager unmistakably indicated a purpose on the part of the writer to purchase for the company he represented the timber in question. Indeed, the correspondence, as a whole, amounted to almost a complete contract. It did not, however, quite accomplish this result, for the reason that it never reached such a point as to show that the parties had distinctly, definitely and finally agreed upon precisely the same thing; although it is manifest from the evidence as a whole that both parties treated this correspondence as a complete and binding contract between them, and that the defendant acted upon it by taking and using the timber in pursuance of its terms.

During the progress of the trial, the latter offered in evidence the record of an action brought against the plaintiffs by one McArthur, which had resulted in a verdict in the latter's favor. This action involved the liability of the plaintiffs to McArthur for some or all of the timber which is the subject-matter of the present suit. Some portions of this record do not appear to have been relevant evidence in this case, but at the same time, other portions of the same were both relevant and material. The court

admitted in evidence the entire record, over a general objection to its admissibility.

There was a verdict for the defendant, and the plaintiffs excepted to the overruling of their motion for a new trial. Omitting minor points presented by this motion, we will briefly discuss the more important questions it brings before us for review.

1. The first of these relates to the action of the court in admitting in evidence the record above mentioned. The rule is well settled, that if a mass of testimony, such for instance as a voluminous record composed of numerous separate documents, some of which are admissible and some inadmissible, is offered in evidence as a whole, it will not be error to reject it as a whole; for, in such case, it is clearly the duty of the party tendering such testimony to point out and offer separately the relevant and material parts to the benefit of which he is entitled. The correctness of this rule was recognized in the case of *Herndon* v. *Black*, decided at the March term, 1895. 97 *Ga.* 327. On the other hand, where evidence partly competent and partly incompetent is offered as a whole, and a mere general objection to its admissibility is made, admitting all of such evidence affords no legal cause of complaint to the objecting party. This must necessarily be true, for the reason that the effect of a general objection to the evidence as a whole is to assert that none of it is admissible; and if this is not so because a portion of it is pertinent and material, such general objection must fail because obviously lacking in merit and in truth. If counsel honestly believes none of the evidence so offered is admissible, it is manifestly proper that by general objection he insist that the whole of it be excluded. If, however, his real reason for objecting to the evidence is that he thinks it contains some irrelevant matter, the proper course for him to pursue is to point out to the court such matter as he thinks inadmissible, and thus ask the court to pass upon the merits of his real objection.

It is an elementary rule of practice, that to entitle a party to the benefit of any right upon which he insists, he must state his claim thereto clearly and intelligibly, in order that the court may understandingly and advisedly pass thereon.    Counsel may in utter good faith object to a voluminous mass of evidence upon the idea that it contains no matter which is competent; but in every instance, he does so at his peril, for if the view he entertains be in point of fact erroneous, there can be no merit in his objection. The fact that the party offering such evidence is not on his part entitled, as matter of strict right, to thus smuggle in portions which would be clearly inadmissible if offered separately, cannot relieve the objecting party of his plain duty of stating to the court the precise ground, or grounds, of objection upon which he relies.    However irrelevant and objectionable evidence may be, and no matter how obvious it may be that the party offering the same has no right to have it admitted, the rule of law is unbending that the opposite party must not only object to its introduction, but must also distinctly state the ground or grounds upon which he insists it should be excluded.    A mere general objection to it will not suffice; and even if he objects to it specifically, upon grounds devoid of merit, he will be held to have suffered no injury if the court correctly rules against him as to the objections he actually prefers, and this is so though the evidence in question would not for a moment have withstood the test of other grounds of objection not brought to the attention of the court.

This court will certainly not reverse the action of a trial judge either in admitting or in rejecting evidence offered as a whole, some of which is competent and other portions of which are incompetent, when the complaining party has utterly failed to meet the requirements imposed upon him by law as to the manner in which he shall state and insist upon his rights in the premises.    In a word, it is the duty of counsel, and not of the presiding judge, to properly

manage and conduct cases entrusted to their care. If they fail in their attempts so to do, it certainly is not incumbent upon the trial judge to take them in hand and guide their exertions in the right direction. On the contrary, it would be highly improper, it occurs to us, for the judge to thus become a partisan in a case rather than a presiding magistrate. In practice, the judge will generally exercise a wise discretion as to evidence offered in "bulk." If it, in the main, appears to be pertinent and competent, he will doubtless admit it, unless the objecting party undertakes to point out wherein the evidence is irrelevant and objectionable; while, on the other hand, if as a whole the evidence is of doubtful materiality, the court will not feel bound to admit it simply because some parts of the same, if offered separately, would be entirely unobjectionable. At all events, in no instance can either party be hurt if he but observes the plain duty which the law points out to him for his guidance in the matter.

2. The character of the correspondence which the plaintiffs insisted constituted the contract between themselves and the defendant has already been indicated. It would be impossible to read the letters written by the defendant's general manager, without reaching the conclusion that he certainly intended to purchase from the plaintiffs the timber in question. It was therefore manifestly error to allow him to testify, "It was not my purpose to trade with them [the plaintiffs] by writing these letters." This testimony was clearly inadmissible for at least two good reasons: (1) it contradicted the terms of the writings, which being plain and unambiguous, constituted the best evidence as to the intention of the writer; and (2) it related to a secret and undisclosed intention on the part of writer. Evidence as to a party's knowledge or ignorance upon any given subject is often competent, and may frequently be shown by his own testimony; "but his undisclosed intent is not usually competent." Abbott's Trial Ev. 269, note 11,

citing Nevins *v.* Dunlap, 33 N. Y. 676; Dillon *v.* Anderson, 43 N. Y. 231.    We make the following extract from the opinion of Folger, J., in the latter case: "The defendant, being a witness in his own behalf, was asked by his counsel: 'Did you *intend* to make an individual contract?' which question was overruled by the court.    It called for his purpose mentally formed, but undisclosed to the plaintiff.    It sought to annul, by an intention not expressed, words and acts relied upon by the plaintiff, by which he was influenced, and which of themselves were *prima facie* evidence of an agreement.    An agreement is said to be the meeting of minds of the parties.    But minds cannot meet when one keeps to itself what it means to do, nor can one party know that the other does not assent to a contract, the terms of which have been discussed and settled between them, unless dissent is made known.    Here was the oral bargaining going before the written contract.    Here was the written contract signed and delivered without qualification of the act of delivery, without the expression of the intention called for by the question that the act of delivery was not to be taken as meaning all it seemed to mean."    Applying the principle thus announced to the facts of the present case, the purpose or intent which inspired the defendant's general manager to write the letters in question was entirely immaterial.    The plaintiffs had an undoubted right to place upon the language employed in these letters its usual, natural and ordinary interpretation, and to treat the writer as meaning what the language he adopted unquestionably purported to express.    His letters would certainly seem to warrant the conclusion that he seriously contemplated effecting a "trade" with the plaintiffs—not that he was writing in a spirit of pure idleness, innocent of design or purpose.

3–4.    In *Robinson* v. *Weller*, 81 *Ga.* 704, this court decided that while a contract of sale could be made by correspondence through the mails, or by telegraph, in order to

render the same binding, the offer of the seller must be accepted by the purchaser unequivocally, unconditionally and without variance. In other words, there must be a mutual assent of the parties—"they must assent to the same thing in the same sense." See also *Stix* v. *Roulston*, 88 *Ga.* 748, citing 1 Parsons, Cont. \*475. The above quoted extract from the New York case is also pertinent in this connection. We do not think that the correspondence between Harris & Mitchell and the Lumber Company, tested by any recognized legal rules of construction, ever amounted to a fully completed and binding contract. Nevertheless, the evidence shows unmistakably that the parties so treated it, and this amounts to the same thing, in law, as if this result had been successfully accomplished by the letters themselves. Upon the strength of the correspondence, the defendants cut and used the timber, and they ought to pay for it at the price mentioned in the letters (there being no disagreement as to price), unless they are able to sustain their defense that the timber did not really belong to the plaintiffs, but to another, or others, having the paramount title to the same and to whom, consequently, the Lumber Company would ultimately be liable to account at its market value. This defense, if proved, ought to prevail. It seems the only meritorious ground upon which the defendant can stand.

5. We grant a new trial in this case because of the error pointed out in the second head-note. But for this, we find nothing in the record which would require a reversal of the judgment.　　　　　　　　　　*Judgment reversed.*