## GEORGIA CANE PRODUCTS COMPANY v. CORN PRODUCTS REFINING COMPANY.

1. Allegations that a seller desired to obtain the exclusive patronage of a purchaser of his products, and informed the latter, or his predecessor in business, that the seller intended to adopt "a liberal plan of profit-sharing" with the purchaser and such other patrons as should in the future purchase exclusively from him certain articles of merchandise, do not set forth a contract to be continued for any certain time or for any certain amount of profits, so as to furnish a basis for a recovery for a breach thereof.

2. Allegations that each year for several years the seller notified the purchaser that a certain amount (varying in different years) would be paid to the purchaser as its share of profits for such year, which was

done until a certain year, when no amount was stated as profit to be paid to the purchaser, and none was paid, although the purchaser paid a higher price for the goods of the seller than it would have been necessary to pay for like articles from competitors of the seller, do not serve to show any contract for the breach of which damages can be recovered.

3. General allegations to the effect that the conduct of the seller, stated in the preceding headnotes, led the buyer (with intention so to do) to believe that the profit-sharing arrangement would be continued in future annually, and that the buyer would receive as a share of profits at least as much as the seller allowed it for the last year for which payment was made, do not set out any facts showing a contract and breach.

4. Whether or not a plea of set-off filed by a defendant was properly stricken, yet if the amount claimed therein was in fact conceded and allowed to him in rendering judgment, the ruling furnishes no ground for a reversal.

5. The defendant in error having obtained an order from the presiding judge requiring the clerk to send up certain parts of the record in addition to those specified by the plaintiff in error, and such additional record being superfluous and unnecessary, the cost of bringing it to this court is taxed against the defendant in error.

NOVEMBER 15, 1913.

Complaint. Before Judge Gilbert. Muscogee superior court. November 4, 1912.

*Slade & Swift,* for plaintiff in error.

*James W. Austin* and *Love & Fort,* contra.

LUMPKIN, J. The Corn Products Refining Company brought suit against the Georgia Cane Products Company to recover on an open account for goods sold to the defendant. The latter filed certain pleas setting up breach of contract, that the contract was for the purpose of creating a monopoly, etc.; which were stricken. An admission was made as to the amount, and the court rendered judgment for the plaintiff. The defendant excepted.

1-3. Before damages can be recovered for a breach of contract, there must be a contract to break. In the present case the defendant sought to set off against the plaintiff's claim damages for an alleged breach of contract to pay it a certain amount as its share of profits. The difficulty with its plea was that it set out neither a contract nor any legal measure of damages. To characterize a thing as a contract, which, under the facts alleged, is no contract, is not enough; and a plea based on such allegations is demurrable. In substance, the plea alleged that on December 8, 1906, the plaintiff communicated to two corporations "and their successors" (the property of which corporations the defendant afterward bought and

to the business of which it succeeded) "the intention to adopt a liberal plan of profit-sharing with defendant and such of its other patrons as should in the future purchase exclusively glucose and grape sugar from plaintiff." The announcement of an intention to "adopt a liberal plan of profit-sharing" does not create a contract for any definite plan, or for any certain amount or proportion of profits, or one to continue for any certain time.

It was alleged in the plea, that the plaintiff then announced that the profits to be shared for the last six months of the year 1906 amounted to ten cents per hundred pounds on glucose and grape sugar, and that this was paid to the defendant on December 31, 1907; that on January 23, 1908, the plaintiff advised the defendant that it would pay fifteen cents per hundred pounds on shipments of glucose, corn syrup, and grape sugar made to the defendant during the year 1907, and paid that amount on January 7, 1909; that about January, 1909, the plaintiff advised the defendant that it would pay the defendant fifteen cents per hundred pounds on shipments made to the defendant during 1908, which it did on January 7, 1910; that early in the year 1909 the plaintiff notified the defendant that the amount to be paid for profit-sharing on shipments during that year would be smaller, on account of reductions in price; that in December of that year it advised the defendant that it would pay five cents per hundred pounds on shipments during that year, and this was done on March 8, 1911. No other announcement was made after that time; and the defendant claims that it should have five cents per hundred pounds on shipments during the year 1910, as it continued to buy exclusively from the plaintiff during that year, although its prices were at least five cents per hundred pounds higher than those of its competitors. So far from showing any definite contract, this course of dealing shows that the plaintiff itself determined what amount it would pay under its "liberal policy" each year, and bound itself no further.

The defendant alleged, that, "relying on plaintiff's confident assurance that said profit-sharing contract was to be continued in the future annually, and plaintiff having, by its acts aforesaid, led defendant to believe, with intention so to do, that said contract would be continued as alleged at least at the rate of five cents per hundred pounds unless notice of further reduction of profit-sharing

was given," defendant purchased exclusively from the plaintiff. The difficulty with the defendant's allegations on this subject is that they show not the slightest agreement or assurance by the plaintiff to the effect stated, nor anything authorizing the defendant to claim any definite contract of the kind which it seeks to enforce. There is an old adage that "it takes two to make a bargain." The defendant alone could not make one. Apparently with it "the wish is father to the thought," but a court can not give damages based on mere anticipations and expectations. One's business or personal associations may prove disappointing and unprofitable, but such unfulfilled hopes, in the absence of definite contract, do not give the right to cure the disappointment with the salve of damages. There was no error in striking the paragraphs of the defendant's answer which sought to recover from the plaintiff on account of a breach of contract.

4. Though a plea of set-off as to a certain item of $56.99 was stricken, the amount was allowed to the defendant in rendering judgment, and no harm was done.

5. The defendant also pleaded that a number of companies entered into an agreement to create a monopoly in the manufacture and sale of certain products, and that a contract was made with the defendant to buy exclusively from the plaintiff, which formed a part of such monopolistic arrangement, and was illegal. The paragraphs of the answer setting up this defense were also stricken on demurrer. In bringing the case to this court, the defendant expressly abandoned in the bill of exceptions all of its special pleas except those dealt with above. The plaintiff nevertheless applied to the presiding judge and obtained an order requiring the clerk to send up a transcript of the parts of the record containing such abandoned pleas. Counsel for the defendant moved to have the cost of such additional record taxed against the plaintiff. After examining the entire transcript, we think that such additional record was unnecessary and superfluous; and the cost of bringing it to this court is taxed against the defendant in error. Civil Code (1910), § 6149, par. 2.

*Judgment affirmed. All the Justices concur.*