### 9652. SOUTHERN COTTON OIL COMPANY v. FARKAS.

Plaintiff having declared on an oral contract, and the proof showing a written one, the court properly directed a nonsuit.

DECIDED FEBRUARY 12, 1919.

Action on contract; from city court of Albany—Judge Clayton Jones. February 13, 1918.

*R. R. Jones,* for plaintiff. *Milner & Farkas,* for defendant.

BLOODWORTH, J. The Southern Cotton Oil Company sued Farkas, alleging that it entered into an oral agreement with him whereby he sold to it 50 tons of sound cottonseed at $65 per ton, and was to ship the seed, with draft attached to bill of lading for each car; that pursuant to this he shipped two cars of cottonseed

from Albany to Dawson, Ga.; with sight draft attached to the bill of lading, and after payment of the draft the plaintiff discovered that the two cars were short 6,370 pounds of seed, of the value of $207.02; that it received only 76,930 pounds of the 50,tons purchased, and under. the contract there was still due to it 23,070 pounds, worth at the time of bringing the suit $10 per ton more than the contract price, making the defendant due the plaintiff therefor $115.35, "the difference in the contract price and the market price of 23,070 pounds of cottonseed." The total amount sued for was $322.37. The defendant filed a plea as follows: "Defendant denies each and every paragraph of said petition." The plaintiff moved to strike the plea, on the ground that it was "in effect a plea of general issue." This motion was overruled, and the case proceeded to trial. At the conclusion of the evidence for the plaintiff a nonsuit was granted, on motion of the defendant's counsel; and the plaintiff excepted.

1. The court committed no error in refusing to strike the plea. Civil Code (1910), § 5634.

2. Upon the trial of the case C. E. Ragan, sworn for the plaintiff, testified in part as follows: "My occupation is manager of the Southern Cotton Oil Company, at Dawson, Ga. My duties as such manager are buying cottonseed, selling the by-products, just general management of the plant . . . . I employ agents over the country to buy seed for us. I employed Mr. Davis of the Davis Grocery Company in Albany the past season to represent us. His duties were to buy seed under my instructions upon my quotations from Dawson.. . . Mr. Davis made this contract that we are now suing on, with my authority. I don't know what the contract was, except what he told me over the phone. As a matter of fact I think the contract is in writing, I-think I have it right here in court. The only contract I have ever had in reference to these seed from Mr. Farkas is a contract Mr. Davis made, and that contract is in writing. . . After the discussion came up about the seed he sent me this memorandum and confirmation of sale. It was signed by Meyers. This memorandum and confirmation of sale is the contract we are now suing on, the verbal contract over the phone. I told Mr. Davis over the phone to buy them. I only claim one contract with Paul Farkas. . . I know that represents the particular trade we are now suing on [witness here referring to

the confirmation of sale signed by Joe A. Meyers]." J. C. Davis testified in part: "I was in the employ of the Southern Cotton Oil Company in the fall of 1917, in Albany, in the capacity of buying cottonseed. . . I bought these seed from Mr. Farkas through Mr. Meyers. . . Me and Meyers reduced that contract to writing. The contract is in writing and right here in court." J. A. Meyers, for plaintiff, testified: "I contracted with Mr. Davis for these seed. . . My contract was reduced to writing. . . I sold those seed to Mr. Davis for the Southern Cotton Oil Company, made that contract for Mr. Farkas. . . The contract was one contract for 50 tons, and that was reduced to writing." Plaintiff introduced the following writing, dated September 15, 1917: "This is to confirm sale of 50 tons sound cottonseed at $65.00 per ton f. o. b. cars Albany. Shipment as soon as possible. (Signed) Joe A. Meyers." In reference to this writing the bill of exceptions says: "the same being the contract in this case about which witnesses testified had been reduced to writing, and being the only writing in reference to the contract between the parties in this case." It may be that the record in this case does not show all the facts, but as the record comes to us it shows only one "contract", and that is the paper dated September 15, 1917.

In the brief of plaintiff in error he insists: "The proof does not show a written contract. The most that can be said of the writing introduced in evidence is that it is evidence of the contract. The writing itself fails in many essentials of being a contract. It is not signed by both parties. It is not addressed to anybody. It was simply a confirmation of the sale, written down by one of the parties, but not assented to by the other party to the contract. The writing was unilateral. It no doubt embodied the terms of the contract that had been made between the parties, but the Southern Cotton Oil Company did not sign it, nor did it assent in writing to its terms." Had there been no performance of this "contract" the argument of the plaintiff in error would probably be good. But the evidence shows that the agents of the contracting parties reduced the contract to writing, each agent acting for his principal, and that the principals acted on and ratified the contract made by the agents, and cottonseed were shipped and accepted in accordance therewith; and for this reason the incomplete contract was perfected. In *Harris* v. *Amoskeag Lumber Co.*, 97 *Ga.* 465 (25 S. E. 519), Mr. Jus-

tice Lumpkin said: "We do not think that the correspondence between Harris & Mitchell and the Lumber Company, tested by any recognized legal rules of construction, ever amounted to a fully completed and binding contract. Nevertheless, the evidence shows unmistakably that the parties so treated it, and this amounts to the same thing, in law, as if this result had been successfully accomplished by the letters themselves." See also *Spence Drug Co.* v. *American Soda Fountain Co.*, 11 *Ga. App.* 475, 476 (75 S. E. 817). Both principals, having acted on the contract as written, incomplete though it is, are bound thereby. Plaintiff having declared on an oral contract and the proof showing a written one, the court properly ordered a nonsuit. "In a *complaint* founded on an account, it was proven by the plaintiff's witness, on the trial, that there was a written contract between the parties, touching the subject matter of the account: *Held,* that the plaintiff could not proceed, and that the defendant was entitled to a nonsuit." *Blue* v. *Ford,* 12 *Ga.* 45. The facts of the instant case clearly differentiate it from those cases in which our courts of last resort have held that, "Where there is a special contract which has been performed on one side, and there is nothing left to be performed but payment on the other, a recovery can be had either upon the contract or upon a general *indebitatus assumpsit* or *quantum meruit.*" *Hill* v. *Balkcom,* 79 *Ga.* 444 (5 S. E. 200).

*Judgment affirmed. Broyles, P. J., and Stephens, J., concur.*