GRAY *v.* AIKEN *et al.*

No. 16649. JULY 11, 1949. REHEARING DENIED JULY 27, 1949.

650

*B. Hugh Burgess, Lokey & Bowden, Blanton Fortson,* for plaintiff.

*Robert E. Knox, Weekes & Candler,* for defendant.

HEAD, Justice. ■ The record in this case presents but one question for determination by this court. Did the plaintiff have an agreement with the defendant, to share in profits, which will support an action for a breach of contract?

Counsel for the defendants insist that the alleged contract is too vague, indefinite, uncertain, and wanting in particularity to be enforced. Counsel for the plaintiff insist that the share due the plaintiff under his contract is a "fair share," "reasonable share," or "just share," and that such terms accord with the statement contained in the plaintiff's letter that "profits will be distributed equitably."

Decisions of other jurisdictions have been cited by counsel for each of the parties, together with a number of texts. It could serve no good purpose, and would unnecessarily lengthen this opinion, to review or analyze the decisions cited from foreign jurisdictions. It is sufficient to note that these decisions have been examined, and while no case cited is in point on its facts with the present case, counsel for each side have cited those decisions from other jurisdictions tending to support their respective contentions.

"A contract is an agreement between two or more parties for the doing or not doing of some specified thing." Code, § 20-101. "Specify" means, "to mention or name in a specific or explicit manner; to tell or state precisely or in detail." Webster's International Dictionary (2d ed.), p. 2415.

In *Carr* v. *L. & N. Railroad Co.*, 141 *Ga.* 222 (80 S. E. 716), it was said by this court: "The foundation of the suit being the contract, it must be a válid, subsisting contract between the parties thereto, and for the benefit of the plaintiffs, and not such an one as is made by the courts for them. It is the duty of courts to construe and enforce contracts as made, and not to make them for the parties."

If we could adopt the view of counsel for the plaintiff, that the terms, "fair share," "reasonable share," or "just share," are contemplated by the contract and are specific, we would be confronted with the unsurmountable hurdle of arriving at a method by which such share could be determined. The plaintiff's proposal was in part as follows: "it being contemplated that profits will be distributed equitably between the parties concerned after taking into consideration the amount of profits and all factors and circumstances contributing to the production of profits." This proposal submits a plan of calculation impossible of determination by any jury or court.

How can it be determined what factors or circumstances entered into the production of profits? Were the profits acquired by reason of the skill, ability, and application of the plaintiff to the defendants' business, or were they acquired by reason of the genius and ability of the defendants and their other employees? Since the business engaged in was the construction and sale of prefabricated houses, could it be that the profits acquired were made by reason of the superior quality of the defendants' product, as compared with other types of construction; or were they acquired by reason of a housing shortage in the territory of the defendants' development? If each of the factors mentioned contributed to the earning of profits, what share should the plaintiff receive in relation to each factor, or would his share be figured in the ratio his services contributed to the profits earned?

We have made reference to but a few of the factors and cir-

cumstances that might enter into the earning of profits. The plaintiff did not specify what percentage or part of the profits he should receive in relation to the factors and circumstances contributing to profits. The plaintiff's proposal, however, does not stand alone. The defendant added the condition: "Assuming that we feel your services have a large and increasing part in whatever we can do in that field we shall see that you have a proper incentive and opportunity to expand them and that you will be rewarded in honest proportion." On this added condition, suppose the defendant did not feel that the plaintiff by his services had a "large and increasing part" in whatever was accomplished in the way of profits. What share would the plaintiff then receive?

The alleged contract does not with sufficient definiteness indicate any basis upon which the plaintiff's share of the profits could be determined. If the plaintiff's proposal and the defendant's reply be considered separately, or if they be consolidated, the result as to certainty in the terms and conditions of the contract would be the same. The correspondence is vague, indefinite, and uncertain, and is insufficient to sustain an action at law or in equity for breach of contract. Compare *Hart* v. *Ga. R. Co.,* 101 *Ga.* 188 (28 S. E. 637) ; *Burney* v. *Jones,* 140 *Ga.* 758 (79 S. E. 840) ; *Georgia Cane Products Co.* v. *Corn Products Rfg. Co.,* 141 *Ga.* 40 (80 S. E. 318) ; *Pepsi-Cola Co.* v. *Wright,* 187 *Ga.* 727 (2 S. E. 2d, 73) ; *Pita* v. *Whitney,* 190 *Ga.* 810 (10 S. E. 2d, 851) ; *Bentley* v. *Smith,* 3 *Ga. App.* 242 (59 S. E. 720) ; *Barrow* v. *Pennington,* 17 *Ga. App.* 481 (87 S. E. 719) ; *Jones* v. *Graham,* 39 *Ga. App.* 822 (148 S. E. 604) ; *Wheeler* v. *Pan-American Petroleum Corp.,* 48 *Ga. App.* 378 (172 S. E. 826) ; *Mosteller* v. *Mashburn,* 64 *Ga. App.* 92 (12 S. E. 2d, 142).

■ "A complete and binding contract may be made by means of an epistolary correspondence, but this result is not accomplished until there has been a definite offer by one of the parties to the correspondence, and an unequivocal acceptance of it by the other without condition or variance of any kind. The parties must 'mutually assent to the same thing in the same sense.' " *Harris & Mitchell* v. *Amoskeag Lumber Co.,* 97 *Ga.* 465 (3) (25 S. E. 519).

In the present case the offer submitted by the plaintiff was not

definite, and there was not an unequivocal acceptance of it by the defendant without variance. The parties did not mutually assent to the same thing in the same sense. The plaintiff's proposal was that profits should be "equitably distributed"; and the defendant, after confirming this provision, stated: "Assuming that we feel your services have a large and increasing part in whatever we can do . . you will be rewarded in honest proportion." Profits might be earned for equitable distribution under the plaintiff's proposal, and at the same time the defendant might not feel that the plaintiff had a large and increasing part in what was accomplished.

In *Monk* v. *McDaniel*, 116 *Ga.* 108 (42 S. E. 360), it was said: "An answer to an offer will not amount to an acceptance, so as to result in a contract, unless it be unconditional and identical with the terms of the offer." See also *May.* v. *McDaniel*, 145 *Ga.* 160 (88 S. E. 934); *Hackett* v. *Ladson*, 152 *Ga.* 483 (110 S. E. 232); *Home Insurance Co. of New York* v. *Huguley*, 42 *Ga. App.* 598 (157 S. E. 391).

The defendant's reply to the plaintiff's proposal was not identical with the proposal made, and no binding contract for the sharing of profits resulted from the correspondence relied upon by the plaintiff.

The court properly sustained the general demurrer and dismissed the action.

*Judgment affirmed. All the Justices concur, except Duckworth, C. J., Atkinson, P. J., and Almand, J., who dissent.*

DUCKWORTH, Chief Justice, dissenting. The decision of the majority is based upon the theory that the contract in question is too indefinite to be valid, and that the petition seeking recovery, which alleges all the facts involved, is insufficient to withstand the general demurrer. The contract of employment consists of a letter from the employee and a letter in reply thereto from the employer. The employee's letter proposes in the third paragraph thereof that he shall be employed for a period of one year at a salary of $7500 and in addition thereto a share of the profits to be determined by the employer at the end of the year, the profits to be distributed equitably between the parties concerned, considering all factors contributing to the profits, and in this respect their association should be on the basis of mutual

confidence and good faith. The employer's acceptance of these terms is made by stating in his letter in reply that they would depend and rely upon each other, and it was then said: "Based on this principle, we confirm the third paragraph of your letter and we pledge you our good faith in being generous in our interpretation of the value of your services in relation to what is achieved." The employer's reply then goes on to say that, assuming that the employee's services would have a large part in the success of the enterprise, the employer would see that the employee had the proper incentive and adequate opportunity to expand them, and then stated: "You will be rewarded in honest proportion." The employer stated that he must be the judge of the value of the employee's services to the customers and to the business. If this were an executory contract, it would be difficult for me to understand how either of the parties to the contract could entertain a serious doubt as to the standard and basis for the determination of this additional compensation. This is not a case where one of the parties was given unlimited authority to arbitrarily make a determination of the amount due the other, but instead, in authorizing the employer to make that determination, it states a plain and clearly understandable basis upon which the determination must be made. The employee describes this basis as an equitable basis. The employer accepts this basis and pledges good faith in fixing the value of his services and describes his duty again by saying, "You will be rewarded in honest proportion." Men without business experience but with a fair conception of what is meant by fairness, by honesty, and by equity would encounter no difficulty in arriving at the amount of compensation to which the employee was entitled. The contract, in my opinion, thus meets the required quality of definiteness prescribed by the Code, § 20-101, and *Jernigan* v. *Wimberly*, 1 *Ga.* 220, *Georgia Cane &c. Co.* v. *Corn &c. Co.*, 141 *Ga.* 40 (80 S. E. 318), *Pita* v. *Whitney*, 190 *Ga.* 810 (10 S. E. 2d, 851), *North Georgia Lumber Co. Lawson*, 40 *Ga. App.* 680 (150 S. E. 865), and *Wheeler* v. *Pan-American Petroleum Corp.*, 48 *Ga. App.* 378 (172 S. E. 826). It should be sustained under the policy of the law stated in *Leffler Company* v. *Dickerson*, 1 *Ga. App.* 63 (57 S. E. 911), which is that the law leans against the destruction of contracts on the ground of uncertainty. The courts of other

jurisdictions have upheld the validity of contracts where the clause fixing the compensation was no more definite than that in the present case. See Noble *v.* Joseph Burnett Co., 208 Mass. 75 (94 N. E. 289); Silver *v.* Graves, 210 Mass. 26 (95 N. E. 948); Brennan *v.* Employers' Liability Assur. Corp., 213 Mass. 365 (100 N. E. 633); Allan *v.* Hargadine-McKittrick Dry Goods Co., 315 Mo. 254 (286 S. W. 16). In the last-named case it was said: "If this case had come here on a question as to the amount of recovery, there might be some merit to it, but, on the cold-blooded facts as presented at the trial, we feel that it would be a travesty upon the law to affirm this judgment." The judgment there under review was one against the contract.

For the reasons stated I am of the opinion that the petition in this case stated a cause of action for the relief sought and was not subject to the general demurrer.

I am authorized to state that Presiding Justice Atkinson and Justice Almand concur in this dissent.