23060. METROPOLITAN LIFE INSURANCE COMPANY *v.*
JONES, administratrix.

DECIDED OCTOBER 6, 1933.

*Smith, Smith & Bloodworth,* for plaintiff in error.
*Hugh Burgess, William H. Mewbourne,* contra.

GUERRY, J.   Mrs. Fannie Jones, as administratrix of the estate of William Jones, deceased, brought suit against the Metropolitan Life Insurance Company on a policy of insurance dated February 17, 1930.   William Jones died November 27, 1930, from cancer of the throat.   The insurance policy provided that the liability of the company was limited to the return of the premiums paid if the insured was not in sound health on the date of the issuance of the policy or if the insured "has within two years before the date hereof been attended by a physician for any serious disease or complaint, or, before said date, had any pulmonary disease, chronic bronchitis, or cancer, or disease of the heart, liver, or kidneys."   The evidence of the physicians is uncontradicted as follows: Dr. Rayle: "My first contact with Mr. Willie Jones [deceased] was the 20th day of January, 1930, at which time he was a patient in the Steiner Clinic. . .   The other treatment I gave Mr. Jones was a series of x-ray treatments beginning on the 23d day of January, 1930 and contin-

uing at intervals to the 9th day of September, 1930. . . All the treatments were directed at the neck, this area being treated from four different angles. I gave prior to February 17, 1930, four treatments [February 17 was the date of the issuance of the policy]; the dates of those were January 23, 25, 27, and 29th. The treatments were given under a diagnosis of carcinoma of the pharynx and neck. . . Carcinoma is a term used to describe cancer arising from certain organs and tissues. . . In other words, I was treating him for a cancerous condition. . . As a matter of fact I stated I didn't know whether he had cancer or not, of my own knowledge; I don't know. Dr. Wood took charge of him in January, 1930. This history and the original examination were made by the interne here at that time." Dr. Fike, the physician in charge of the Steiner Clinic, testified: "I know that he was seen by me on the 21st day of July, 1930, and an observation note made at that time, and that he had far-advanced incurable cancer of the throat and metastasis of the neck. I can't state of my own knowledge when Mr. Jones first entered the Steiner Clinic. The record shows he came the 17th day of January, 1930. Of my own knowledge I can't state that this man, Willie Jones, had cancer February 17, 1930." Dr. Allen testified: that he was an interne at the Grady Hospital at the time Mr. Willie Jones was admitted, and was connected with the Steiner Clinic on January 17, 1930. "On or about January 17, 1930, I made a thorough examination of Willie Jones at the Steiner Clinic. In my opinion at the time of this examination Willie Jones had a large tumor in the left side of the neck, which I diagnosed as carcinoma or cancer." Dr. D. L. Wood, who was connected with the Steiner Clinic, testified that he saw Willie Jones the first time in May, 1930. "In other words he had a cancer arising in the posterior walls of the pharynx, which is the portion of the cardio respiratory system. . . When I saw him, which I think was in May, I examined those glands in his neck. I thought he had cancer at that time. That was my opinion at that time, that he had cancer. . . I wouldn't be absolutely positive about it being cancer at that time, but I was certain enough in my own mind to mark him up for another series of x-ray treatments from his neck. I know that it came from the throat; that was in May. As I say, I wouldn't be absolutely positive that in May he had a cancer of some kind, but my suspicions of cancer

were strong enough for me to give him deep x-ray therapy, which I wouldn't have given him had I thought he was tubercular or something else. . . The cause of his death was cancer of the pharynx, carcinoma of the pharynx of the cervical metastasis. My opinion of this is that he had cancer prior to February 17, 1930. That is based upon my examination and treatment of him and from the progress which the disease had made and from what the patient told me." One of the proofs of death submitted shows that cancer was the cause of death, and the proof of Dr. Wood showed that the decedent received x-ray treatment in January, but that the decedent was never told that he had cancer. The court, over the objection of the defendant, admitted in evidence the following testimony of the decedent's boy: "As to whether I told him [the defendant's soliciting agent, Mr. Herndon] anything in connection with my father's health, I told him he had been up to Grady. When I told Mr. Herndon that my father had been down to Grady he said he would go over there and fix the examination and get the policy passed on if he had been up there." Exception was also taken to the following charge of the court: "If at the time of the issuance of this policy you should find from the evidence that the insured was not in sound health, that is to say, that he was ill, and if the company knew that he was ill at the time, if the company's agent was informed and had knowledge of the condition of his health at that time, the company would be estopped and could not thereafter set up his illness as a defense. It is for you to say whether or not the company had notice of the condition of the insured's health at the time of the issuance of the policy. If the company did not have notice, and if his health was not good, and/or he was not in sound health, there could be no recovery, but if the company knew of the condition of his health at the time of the issuance of the policy they would be bound by that knowledge and could not successfully defend upon this stipulation in the policy."

1. It is admitted by counsel for the defendant in error in their brief that the testimony quoted above with reference to the deceased being carried to Grady Hospital is insufficient to give notice to the company that the insured had cancer. As a matter of law such notice could hardly be termed constructive notice. The rule laid down in *Metropolitan Life Insurance Co.* v. *Dodd*, 41 *Ga. App.* 243 (152 S. E. 850), is as follows: "Such waiver will not result

unless either the company or some authorized agent had actual notice of the fact or condition in question. Constructive notice will not be sufficient for such purpose. *Interstate Life and Accident Co.* v. *Bess, 35 Ga. App.* 723 (134 S. E. 804) ; *Wiley* v. *Rome Ins. Co., 12 Ga. App.* 186 (76 S. E. 106)." Under that rule, evidence here was insufficient to authorize a charge of the character here excepted to. It was, therefore, error for the court to submit to the jury the question of waiver by reason of notice to the agent, under the testimony as above set out.

2. The defendant in error introduced no testimony to contradict the testimony of the doctors as set forth in the statement of facts. It appears from the testimony of Dr. Rayle and Dr. Allen that the deceased was being treated for cancer nearly a month before the policy of insurance was issued. The testimony of other doctors was that from their examination of the deceased in July, he had carcinoma of the pharynx before February 17, 1930. The evidence demands the conclusion that the insured was treated by a physician within two years prior to the issuance of the policy for a serious complaint, namely, cancer. The policy provided that if such condition existed, the liability of the company would be limited to the return of the premiums paid; which was done in this case. There being no sufficient evidence of any notice to the company of this condition and a waiver thereof, we hold that the verdict is without evidence to support it.

*Judgment reversed. Broyles, C. J., and MacIntyre, J., concur.*