24896. INTERSTATE LIFE AND ACCIDENT COMPANY
*v.* WILSON.

Decided November 25, 1935.

172

*Hay & Gainey,* for plaintiff in error.

*Steve M. Walkins, Alexander & Jones,* contra.

GUERRY, J. Juanita Wilson filed suit on an insurance policy issued on the life of her husband, Archie Wilson, on September 11, 1933. Archie Wilson died on April 21, 1934. The policy was not attached to. the petition, it being alleged that the policy had been taken by the defendant company, which refused to deliver it to the plaintiff. The defendant filed an affirmative defense, alleging that on February 13, 1933, it issued a policy of insurance on the life of Archie Wilson, in which policy Mary Wilson, a sister of the deceased, was named as beneficiary; that the defendant had paid Mary Wilson the full amount due thereon by reason of the death of Archie Wilson; that on September 11, 1933, it issued to Archie Wilson the policy sued on; that in his application for this policy he failed to refer to the policy naming Mary Wilson as beneficiary, or in any way to identify himself as the same person who was insured in said former policy; and that the policy sued on contained the following provision: "The liability of the company shall be limited to the amount of the premium paid hereon, if any other policy on said life shall have previously been issued by this company and shall be in force at the date hereof, unless this and the previous policy contain endorsement signed by the president, vice-president, or secretary, permitting such policy to be in full force at the date hereof. The company shall not be presumed to know of the existence of any previous policy, and the issuance of this policy shall not be deemed a waiver of this condition." Neither of the policies contained an endorsement permitting the insured to hold both at the same time. It was admitted in the plea that the premiums due on the policy sued on had been paid up to the time of the death of Archie Wilson. By amendment the defendant alleged that the policy contained also the following provisions: "Agents (which term includes managers and assistant managers) are not authorized and have no power to make, alter, or discharge contracts, waive forfeitures, or to receive premiums on policies which have been terminated four weeks or more. . . The acceptance of this contract of insurance is a guarantee that it has been ap-

plied for, carefully read, and its conditions, privileges, and limitations are understood and accepted in good faith by the insured, and that the insured waives the right of defense on account of ignorance or failure to understand any of the obligations herein contained." It was further alleged that both applications were signed by the insured and taken by O. J. McGahee, the local agent of the defendant, residing in Thomasville, whose authority was limited to the right to take applications for policies and to collect premiums on such as were issued by the home office in Chattanooga, Tennessee. Both of the policies were delivered to the insured by McGahee. It was further alleged that "up to the time of the death of the said Archie Wilson, however, neither the president, vice-president, nor secretary of the defendant company ever had the fact brought to their attention or within their *actual*-knowledge that these two policies insured the life of one and the same person." The plaintiff demurred on the ground that no legal defense was set out, and that the answer showed on its face that the defendant had notice of the pre-existing policy at the time of the issuance of the policy sued on, and that it thereby waived the provision prohibiting such double insurance. There was another ground of demurrer which will be discussed later in this opinion. The demurrer was sustained, and the answer stricken.

1. The plaintiff in error contends that there were two policies on the life of the same person, unknown to the executive officers of the defendant until proofs of death came in; and therefore that liability was limited to a return of the premiums paid. The cases of *Harris* v. *Bankers Health & Life Ins. Co.*, 40 *Ga. App.* 678 (150 S. E. 856), and *National Life & Accident Insurance Co.* v. *Weaver*, 38 *Ga. App.* 590 (144 S. E. 682), are relied on in support of this contention. In the *Harris* case, it was said: "This was a suit by the beneficiary against the insurer, to recover on a life-insurance policy. The policy contained the following provisions: 'This policy shall be void if there shall be in force on the life of the insured a policy previously issued by the company, unless the first issued policy contains an endorsement signed by an officer of the company authorizing this policy to be in force at the same time. . . No person except the president or secretary has the power to modify or in the event of lapse to reinstate this policy or to extend the time of payment of the premi-

ums. . . No agent has the power on behalf of the company to waive any forfeiture, or to bind the company by making any promise, or by making or receiving any representation or information.' On the trial the plaintiff's evidence showed without dispute that at the date of the issuance of the policy there was of force a pre-existing policy in the same company on the life of the insured, on which there was no endorsement authorizing the issuance of the policy sued on. There was nothing to indicate that either the president or the secretary, or any other officer of the company having authority to make or alter contracts, had ever waived the condition as to other insurance, or had any knowledge of the existence of the first policy as applying to the insured; nor did the fact of such previous insurance appear in the application. *Held,* that under the evidence the plaintiff was not entitled to recover, and the court properly granted a nonsuit." In the *Weaver* case, a similar ruling was made. It was there further said, pertinent here: "Where the policy provides also that 'the company shall not be presumed or held to know of . . any previous policy unless such fact . . shall be expressly shown in the application, and the issue of this policy shall not be deemed a waiver of this condition,' the mere fact that at the date of the issuance of the policy there was in existence in the same company a policy on the life of the same insured was, in the absence of knowledge of this fact by the president or the secretary, or some officer of the company with authority to alter contracts, insufficient as notice which would serve as the basis for a waiver by the company of the provisions of the policy. Were this otherwise, the provision in the policy which voids it by reason of the existence of another policy in the same company upon the life of the same insured would be meaningless and a mere nullity."

In each of the cases just cited, the record shows that in the application for the second policy, in answer to the question, "Are you insured in this company?" the applicant answered "No." There was in each instance another policy on the life of the insured in the same company, payable to a different beneficiary. We can readily see that where the applicant himself answered that he had no insurance in such company, the officers of the company could say that they had no knowledge that the

applicant did have such insurance, there being nothing to indicate that the applicant was the same person to whom they had already issued a policy. In the *Weaver* case, supra, it was said that there can be no waiver of this provision in the policy "unless the notice is given to the president or secretary or some officer authorized to waive conditions." It would seem clear that these decisions recognize the principle that if the officers of the company authorized to waive conditions have notice of the fact of another policy being in force, and then continue to accept premiums on the second policy, such conduct would amount to a waiver of the conditions as to indorsements on the policy. Ordinarily a person can not be deceived by a statement which he knows to be false. We can understand that while the officers of a company issuing a policy are chargeable with notice that a policy has been issued to "John Jones," they are not chargeable with notice that every applicant named "John Jones" is the "John Jones" to whom they have issued a prior policy. Especially is this true when, in making a second application for a policy, "John Jones" answers that he is not the "John Jones" to whom a policy has been formerly issued. This distinction was drawn in the *Harris* case, supra, where it was said that there was nothing to indicate that the applicant in the first policy was the same person as the applicant in the second policy. The real question is whether an insurance company in receiving an application for insurance, which application is made and answers are given therein in the utmost good faith, may plead the provisions of the policy, voiding its liability thereon, which provides that the company shall not be presumed to know of the issuance of a prior policy to the same person. It is true as a matter of law and as a matter of right that if its executive officer, president, vice-president, or secretary, have knowledge of the issuance of such prior policy, the failure to indorse such fact on the policy will not avoid it. That would be an affirmative act on their part, which a failure to perform would enure to the benefit of the company. The question then resolves itself to the proposition whether or not A, in issuing a policy of insurance on the life of B on an application made by B which truthfully presents all the necessary facts in regard to the identification of B, such as place of residence, age, and all physical characteristics of B, and six months later takes another

application for insurance on the life of B, which application also speaks the truth and is in accordance with the information given in the first application, may say that it had no actual knowledge of such prior policy. We think not. In the present case the same agent took both applications. It is possible that the company may by contract limit its liability by reason of knowledge which comes to the agent, and not be bound thereby. Such is the holding in the *Weaver* and *Harris* cases. Under such circumstances any false statement made in the application, although known by the agent to be false, will not be held to be knowledge or notice to the company, nor could such agent have authority to waive the same.

It is not conceivable, however, that a company issuing a policy on the life of B may say, although all written statements made in the applications are true, and although such written applications would be sufficient to put it on notice, and did at the time they were issued by its executive officers put it on notice as to the identity of the applicant, that it had no actual notice that it was issuing two policies on the life of B. In *Home Friendly Society* v. *Berry*, 94 *Ga.* 606 (21 S. E. 583), it was held that notice to the agent receiving the application was not notice to the agent issuing the policies. Berry in making his applications represented that "he had no other insurance or life membership in the defendant company." In the present case it will be presumed, construing the affirmative answer most strongly against the pleader, that if such question was asked the applicant, he answered correctly that he did have other insurance in the same company. No copies of the applications were attached to the answer, although called for by special demurrer, which demurrer does not seem to have been passed on. In *Life Insurance Company of Virginia* v. *Fitzgerald*, 143 *Ga.* 725 (85 S. E. 913), the insured made an answer that no other policy had been issued on his life, when as a matter of fact another policy in another company had been issued to him. The court held that a condition "that this policy shall be void if the insured is now or shall hereafter become insured in this or any other company or society and the total amount of insurance shall exceed" a named amount, avoided the entire policy if such a condition was violated. Following the decision in *New York Life Insurance Co.* v. *Patten*, 151 *Ga.* 185

(106 S. E. 183), the Supreme Court, in *Penn Mutual Life Insurance Co.* v. *Blount,* 165 *Ga.* 193 (140 S. E. 496), held that where a life-insurance policy is issued, based on statements made in the written application which is attached to and made a part of the policy, and limitations placed therein on the authority of the agent to change, waive, or modify the terms of the policy, notice to such soliciting agent or a violation by such agent of the express terms of the policy and contract of insurance will not be binding on the company. This principle has been followed and somewhat clarified in a recent answer by the Supreme Court to certified questions presented to it by this court in *National Accident & Health Insurance Co.* v. *Davis,* 179 *Ga.* 595 (176 S. E. 387). In the same case, 50 *Ga. App.* 391 (178 S. E. 320), it was ruled that where the application for insurance contains false answers material to the risk, and where the application itself expressly limits the authority of the agent taking it, and such application is attached to and made a part of the policy issued, notice to such agent is not notice to the company. As was said in *Niagara Fire Insurance Co.* v. *Williams,* 1 *Ga. App.* 603, 606 (57 S. E. 1018) : "When an agent is on notice at the time of entering into the contract that the interest of the insured is different from that required by a condition of the policy, the company is estopped from asserting the forfeiture." This principle has been universally applied in the case of fire-insurance contracts in respect to conditions affecting the title to the property to be insured. Notice to the agent has been upheld in such cases, on the theory that the agent himself was the one who issued the policy, and notice to such an agent who had authority to issue the policy was necessarily notice to the company. We think a like principle involved in the present case, where the policy is issued by the executive officer of the company, that where such knowledge is already in their possession, it will not be presumed that they have no such knowledge.

It is true that notice to an agent or officer of an insurance company that amounts to a waiver or estoppel must be actual notice, and not constructive notice. *Orient Ins. Co.* v. *Williamson,* 98 *Ga.* 464, 467 (25 S. E. 560). We recognize, as was said in *Wiley* v. *Rome Ins. Co.,* 12 *Ga. App.* 186 (76 S. E. 1067), that "Constructive notice does not possess in its own essential nature the character assigned to it by law. From the exigent presumptive in-

ferences which the law permits to be deduced from circumstantial evidence, and for reasons of public policy, the law sometimes imputes constructive knowledge of a fact or condition. But this is, after all, a knowledge or notice established in the mind of the law, in consequence of the way in which the law interrupts the evidentiary facts upon which the presumption of knowledge depends, and is a creation of the law in its act of construing facts, conduct, circumstances, or instruments. Constructive notice of a fact, for that reason, is not the equivalent of actual knowledge, so as to evidence a waiver of a forfeiture in a contract of insurance, dependent upon material misrepresentations of fact, merely because the insurer, by the exercise of reasonable care and diligence, could have ascertained the truth as to a fact upon which the waiver is alleged to depend." There is, however, a distinction between implied actual notice and implied constructive notice. The fact that an insurance company has issued a policy of insurance on the life of A is a fact of which it has implied actual notice, and not merely implied constructive notice. Implied actual notice is present although its president, vice-president, and secretary may have forgotten its existence as a fact. As was said in *Clarke* v. *Ingraham*, 107 *Ga*. 565 (33 S. E. 802) : "The terms 'knowledge' and 'notice' are not synonymous or interchangeable, and should not, therefore, be confounded the one with the other. That which clearly does not amount to positive knowledge may often, in a legal sense, constitute actual notice." And, as was further said, there is a distinction "between actual and constructive *notice*" and "actual knowledge and constructive notice." Also: "'Notice is actual when one either has knowledge of a fact or is conscious of having the means of knowledge, although he may not use them. Actual notice may be divided into express and implied. Express notice embraces not only what may fairly be called knowledge, from the fact that it is derived from the highest evidence to be communicated by the human senses, but also that which is communicated by direct and positive information, either written or oral, from persons who are personally cognizant of the fact communicated. The implication of notice arises when the party to be charged is shown to have had knowledge of such facts and circumstances as would lead him, by the exercise of due diligence, to a knowledge of the principal fact.' 16 Am. & Eng. Enc. L. 790."

The insurer in the present case is not bound on the policy sued on, for the return of premiums, if it had no actual notice, express or implied, of the prior policy. By its plea it admits that it had issued another policy on the life of the insured, that its agent in Thomasville took the application for both policies, and that both policies were signed by its executive officers. Neither the policies nor the applications are attached to the answer as exhibits. No fraud or misrepresentations of any kind is pleaded. The insurer had actual knowledge, at the time the second application was presented to it, that a person of the same name, residing in the same town, answering to the identical description as the first applicant, was asking that another policy of insurance be issued to him, and without making any inquiry or asking any questions it issued the second policy and collected the premiums thereon. Its plea that it had no actual knowledge that these two policies insured the same person becomes a bare conclusion, and must yield to the pleaded facts. We think therefore the trial court properly sustained the demurrer and struck the answer.

2. A demurrer was also sustained as to the further defense, that as soon as the defendant discovered, on April 24, on the filing of proofs of loss under both policies, that it insured the same person, it promptly thereafter paid in full the older claim, and issued its check to Juanita Wilson, the wife, in the sum of $8, the amount of the premiums which had been paid on the policy sued on, and that on May 5, 1934, the check was delivered to Juanita Wilson, and she then and there executed her receipt for the same as follows: "$8.00. Received of the Interstate Life & Accident Company of Chattanooga, Tenn., eight and no/100 dollars, which payment is in full of any and all claims against said company upon policy No. A-2, 102, 037 issued upon the life of Archie Wilson. Dated May 5, 1934. Juanita Wilson [Seal], No. 124 Stevens St., Thomasville, Georgia. Witness, O. J. McGahee." Thereafter suit on this policy was filed, and three days later the check was returned to the defendant with letter advising it that suit had been filed, and expressly waiving any question as to the check being legal tender. We think the court erred in striking this plea. In *Burgamy* v. *Holton*, 165 *Ga.* 384 (3) (141 S. E. 42), it was said: "An accord and satisfaction arises where parties by a subsequent agreement have satisfied

the former one, and the latter agreement has been executed. The execution of a new agreement may itself amount to a satisfaction, where it is so expressly agreed between the parties; and without such agreement, if the new promise is founded on a new consideration, in which case the taking of the new consideration amounts to the satisfaction of the former contract." In *Howard v. Georgia Home Ins. Co.*, 102 *Ga.* 137 (29 S. E. 143), which was a suit on an insurance policy, it appeared that shortly after the loss the defendant entered into an agreement with the insured to pay him $250 in full settlement of all liability on account of the loss covered by the policy, and this sum was accepted by the insured in full settlement of the liability, which settlement was complied with by the receipt of a draft from the company to the insured; and although insured made no effort to collect the draft, but brought suit, the court said: "It appearing conclusively that the draft was accepted in payment, and that nothing was done to prevent the plaintiff from making a full investigation of his legal rights, there was no error in refusing to allow him to testify that after the contract of accord and satisfaction had been completed he declined to be bound by it and offered to rescind." Where there is a bona fide dispute between parties either as to the amount of a claim or as to ultimate liability thereon, and this dispute is settled by an agreement which has been executed, the matter is and should be at an end. If one party has deceived or defrauded the other and procured his assent to such agreement and acceptance, the contract may be rescinded. If the $8 had been paid in cash in this case, and no fraud, misrepresentation, or overreaching had occurred, the insured would have no cause of action. If the matter had been closed by a note properly executed, the agreement was at an end. It was alleged that the check given in the present case was accepted as being legal tender. Even so, it was a binding obligation executed by the company, and after notice of its import the receipt was signed. We think that if the defendant can establish the allegations as set forth, it would be entitled to a verdict. The court therefore erred in sustaining the demurrer on this ground.

*Judgment reversed. MacIntyre, J., concurs. Broyles, C. J., concurs specially.*

Broyles, C. J., concurring specially. I concur in the ruling made in headnote 2; but in my opinion the court erred also in sustaining that part of the demurrer to the defendant's answer which set up an avoidance of liability because of the existence of another policy of insurance issued by the company to the same person, Archie Wilson, without an indorsement thereon, signed by the president, vice-president, or secretary of the company, allowing the additional insurance. I do not think the facts set forth in the answer showed that the company had actual notice that the Archie Wilson insured in the second policy was the same person insured in the first policy. In my opinion this case is controlled by the decisions of this court in *National Life Ins. Co.* v. *Weaver*, 38 *Ga. App.* 590 (supra), and *Harris* v. *Bankers Life Ins. Co.*, 40 *Ga. App.* 678 (supra). I can not see any *material* difference between the facts of those cases and the facts of the instant case.