## 27443. MUTUAL BENEFIT HEALTH AND ACCIDENT ASSOCIATION *v.* MARSH.

432

Decided June 16, 1939.   Rehearing denied July 26, 1939.

*Bussey & Fulcher,* for plaintiff in error.

*Curry & Curry, Paul T. Chance,* contra.

MacIntyre, J.  On October 30, 1937, the plaintiff made an application to the insurance company for a life, accident, and health policy which was issued to him, the application being made a part of the policy.  Thereafter, the insured accidentally lost a leg.  He made a demand for payment under the policy which was refused, and he brought suit thereon.  The defendant contended that the policy was void because of fraud and because of material misrepresentations in the application, in that the plaintiff failed to disclose that he had other life, health, and accident insurance, or application therefor pending; failed to disclose that other life or disability insurance had been declined, postponed, rated up, or canceled; failed to disclose all claims demanded or received on account of injuries or illnesses; failed to disclose that he had had bronchitis, malaria, a spot on his lung, an infected sinus, and la grippe, and failed to disclose an operation for tonsils and adenoids.  The trial resulted in a verdict for the insured for the amount sued for ($1091) and "all statutory charges and attorneys' fees in amount of $300."  The defendant's motion for new trial was overruled and it excepted.  The only question presented is whether the evidence authorized the verdict, the defendant confining its motion to the general grounds and the special grounds which are merely elaborations of the general grounds.

The policy in question was issued to the plaintiff on November 8, 1937.  Attached to and made a part of the policy was an applica-

tion dated October 30, 1937, which contained, among other things, the following pertinent parts: 8. "What disability or accidental death insurance do you carry? What companies and amounts?" "None." "Have you any application for life or disability insurance pending? Answer to each." "No." 9. "Has any application ever made by you for life or disability insurance been declined, postponed or rated up, or has any life or disability insurance issued to you been canceled? Answer to each." "No." "Has any renewal or reinstatement of life or disability insurance been refused? Answer to each." "No." "If so, give full particulars." 10. "Have you ever had any claim for or received indemnity on account of any injury or illness? If so, what companies, dates, amounts, and causes?" "Accident 1928. Automobile. Don't know. Mass. Mutual." 12. "Have you ever had any of the following diseases: Rheumatism, neuritis, . . tuberculosis, bronchitis, . . tonsilitis, . . malaria? Name diseases, dates and length of disability." "None of above." "Has any of your family ever had tuberculosis?" "No." 13. "Have you ever received medical or surgical treatment or had any local or constitutional disease not mentioned above, within the last five years? Answer to each." "No." 14. "Have you ever been operated on by a physician or surgeon?" "No." 18. "Do you hereby apply to the Mutual Benefit Health & Accident Association for a policy to be issued solely and entirely in reliance upon the written answers to the foregoing questions, and do you agree that the association is not bound by any statement made by or to any agent unless written herein; and do you agree to notify the association promptly of any change in your occupation, or if you take additional insurance, and do you hereby authorize any physician or other person who has attended or may attend you to disclose any information thus acquired?" "Yes."

On the trial of the case the plaintiff insured testified, relative to the first part of question 8, that he did not have any insurance at the time he made his answer and that his answer was true. Relative to the second part of question 8, as to any pending applications for other insurance, he testified: "That question was not asked or answered by me." However, he further testified: "I had applied for a policy of insurance with the Provident Life & Accident Insurance Company on October 25th, 1937 [five days before the

date of the application for the policy in question], but had not received it on October 30, 1937, the time that I applied for a policy with the defendant company. I did receive a policy from the Provident Life & Accident Insurance Company about three weeks later. That policy covered the same loss or indemnity as the one in this case covered, and paid me for the loss of my leg $1000." As to question 9, relative to cancellation of any life or disability insurance, he testified on cross-examination: "As to this policy with the Benefit Company being canceled out on me due to my having so many claims, the trouble there was they canceled out the policies on nearly everybody having a policy with them. It was their custom to cancel them after a man got down and out. That policy was handled by the railroad company, the premiums being deducted from our pay. However, they did cancel the policy." With reference to question 10, the insured testified and the documentary evidence showed that the insured, over a period of thirteen years, to wit, from January 12, 1920, to December 21, 1932, had sustained approximately seven accidents and was sick approximately eight times, from which he had received approximately $2200 in indemnities. As to question 12, the undisputed evidence showed, and the insured admitted, that he had had "malaria fever and la grippe," being disabled for twenty-eight days; that he had had his tonsils and adenoids removed; that he had had "bronchitis and infected sinus," being disabled for thirty-two days, and on another occasion had had the same trouble, being disabled sixty-five days. Relative to question 14, the insured said he had received certain benefits "which covered an operation for tonsils and adenoids removed." It further appears from the evidence that the insured made a proof claim on March 12, 1938, for the loss of his leg on March 3, 1938, which claim was signed by him and sworn to before a notary and contained the following questions and answers: "Have you any other accident insurance?" "No." (It being unquestioned by the evidence that he did.) 19. "Have you ever received any injury prior to the one herein mentioned?" "No." "If so state when and what it was?" "No." (It being unquestioned by the evidence that he had.)

It has been repeatedly held by this court and the Supreme Court that as a general rule questions as to the truth and materiality of representations in policies of insurance are questions of fact for

the jury. However, where all the testimony produced on the trial, relative to questions of fact, "excludes every reasonable inference but one, the issue becomes an issue of law for determination by the court." *Life Ins. Co. of Va.* v. *Pate,* 23 *Ga. App.* 232 (3) (97 S. E. 874); *New York Life Ins. Co.* v. *Hollis,* 177 *Ga.* 805, 807 (171 S. E. 288); *Jefferson Standard Ins. Co.* v. *Henderson,* 37 *Ga. App.* 704 (141 S. E. 498). "'The materiality of a concealment or representation of fact depends, not on the ultimate influence of the fact upon the risk or its relation to the cause of loss, but on the immediate influence upon the party to whom the communication is made, or is due, in forming his judgment at the time of effecting the contract. The party thus sought to be influenced is generally the insurance company. Though the loss should arise from causes totally unconnected with the material fact concealed or misrepresented, the policy is void, because a true disclosure of the fact might have led the company to decline the insurance altogether, or to accept it only at a higher premium.' In other words, the variation from the truth must be such as to change the nature, extent, or character of the risk." *Firemen's Insurance Co.* v. *Parmer,* supra.

With reference to representations in applications for insurance, the present Code declares in § 56-820, which repeats verbatim the language used in the Code of 1863, § 2752, that "Every application for insurance shall be made in the utmost good faith, and the representations contained in such application shall be considered as covenanted to be true by the applicant. Any variation by which the nature, extent, or character of the risk is changed shall void the policy." And Code, § 56-821, which repeats verbatim the language used in the Code of 1863, § 2753, declares: "Any verbal or written representations of facts by the insured to induce the acceptance of the risk, if material, must be true, or the policy shall be void. If, however, the party shall have no knowledge, but shall state on the representation of others, bona fide, and shall so inform the insurer, the falsity of the information shall not void the policy." However, the legislature passed an act in 1927 (Ga. L. 1927, p. 223), which is now codified in the present Code in § 56-908 as follows: "All persons applying for life insurance in a life insurance company writing life insurance in this State shall submit to such reasonable rules and regulations as may be prescribed by such

insurance company; and after a policy shall be issued on the life of such person, the beneficiary of such policy shall be entitled to collect the amount of such policy under the terms of the contract when it shall mature, unless the applicant or beneficiary shall have been guilty of actual fraud or shall have made material misrepresentations in procuring such policy, which representations change the character and nature of the risk as contemplated in the policy so issued by the company. No statements, covenants, or representations contained in applications for insurance shall ever be held to be warranties, but shall be held to be representations only."

It should be noted that Code, § 56-1406, declares that "A stricter good faith as to representations and concealments is required in mutual insurance than in any other similar contracts," and this court has said in the case of *Mutual Benefit Health & Accident Asso.* v. *Bell*, 49 *Ga. App.* 640, 645 (176 S. E. 124), that "fire, life, and accident insurance policies are voided where the insured makes representations which are false, though the same are made in good faith, if thy relate to material matters." See also cases there cited. Therefore, where the answers, as in the instant case, were such a variation from the truth as to "change the character and nature of the risk as contemplated in the policy so issued by the company," they will void the policy. Code, § 56-908; *Firemen's Ins. Co.* v. *Parmer*, supra.

It has been held by this court that a reply in the negative, in a signed application, to a question as to whether the applicant had ever been rejected for life insurance, materially affected the nature, extent, and character of the risk and avoided the policy. *Sovereign Camp W. O. W.* v. *Reid*, 53 *Ga. App.* 618, 621 (186 S. E. 759). In *N. Y. Life Ins. Co.* v. *Hollis*, 177 *Ga.* 805, where the insured answered negatively when questioned as to previous illnesses or consultations with doctors, the Supreme Court held: "It would seem that in some cases a mere headache would be a negligible matter; but the insured in this case had been treated for other sickness than that of a mere headache. If she had had merely headaches and had been treated for those headaches by a physician, the insurance company should have been informed of the fact by a truthful answer to the question contained in her application. A misrepresentation as to whether the insured had been attended by a physician, whether for a headache or other ailment, was material, because the company

would, upon being informed that she had been treated many times for headache, have had the right to investigate and to ascertain for itself how serious was the ailment for which she had been treated." Where an insurance policy is issued, based on statements made in the written application which is attached to and made a part of the policy, and limitation is placed therein on the authority of the agent to change, waive, or modify the terms of the policy, and the insured makes an answer that no other application has been taken out or that no other policy has been issued on his life, or for injury, or for illness, when as a matter of fact another policy in another company has been issued, or another application has been taken out, the policy is void. *Life Insurance Co. of Va.* v. *Fitzgerald,* 143 *Ga.* 725 (85 S. E. 913) ; 4 Couch's Cyclopedia of Insurance Law (1929 ed.), § 895; *Interstate Life & Accident Co.* v. *Wilson,* 52 *Ga. App.* 171, 176 (183 S. E. 672).

Of course this case is distinguishable from those cases in which the policy was complicated, and the insured might reasonably have, and did, misinterpret his policy as being a policy of one kind when in fact it was a policy of another, as was the case in *Mutual Benefit Health & Accident Asso.* v. *Bell,* supra.

In his testimony the insured said that certain of the questions were never asked him by the agent, and that among them was question 8, relative to applications for insurance in other companies. This, however, does not affect the rights of the parties, for it appears from the evidence that the insured was laboring under no physical defects; that he was a high-school graduate and could read and write; that he did not sign the application by reason of some misleading artifice or device perpetrated by the agent, or was prevented from reading the application containing the false answers before he signed it, or that the answers were inserted by alteration after the application was signed; and where the application is attached to and made a part of the policy, as in the instant case, the beneficiary suing on the policy can not separately impeach the application as thus integrated therein. The application must stand or fall as a part of the policy, and if the application falls so does the policy, for the insured is committed to the representations set forth in the application. *Southern Surety Co. of N. Y.* v. *Fortson,* 44 *Ga. App.* 329, 339 (161 S. E. 679) ; *Wilkins* v. *National Life & Accident Ins. Co.,* 23 *Ga. App.* 191 (2 *c*) (97 S. E. 879). In

*National Accident & Health Ins. Co.* v. *Davis,* 179 *Ga.* 595 (2) (176 S. E. 387), the Supreme Court has gone even further, and held that where an agent of an insurance company fraudulently inserts false answers in an application for insurance without the knowledge of the applicant, and where the application limits the authority of the agent, and the policy is issued and delivered to the insured, "the insurer would not be held to notice of the falsity of the answers fraudulently inserted in the application by its agent, and would not be estopped; while on the other hand the applicant, later the insured, would be estopped from pleading or proving the fraud of the agent, the application signed by the insured containing the statement 'that the company is not bound by any knowledge of or statements made by or to any agent unless written hereon.' "

In addition, as to question 9, relative to the cancellation of any life or disability insurance, the insured testified that "they did cancel the policy," referring to a policy with another company which had been canceled before the application for the policy here sued on. He unquestionably knew the answer was not the truth, and he should have truthfully answered in order that the company might place such weight upon his explanation as it saw fit.

It will be further seen from the undisputed evidence in this case that at the time Mr. Marsh applied for the insurance he had been disabled an unusually large number of days during the years from January 12, 1920, to December 20, 1932, and had received benefits for sickness and accidents during this time of approximately $2200; that he had been operated on; that he had received treatment in a hospital; that he had had malaria, grippe, and bronchitis; that at the time he made the application he had pending an application with the Provident Life & Accident Insurance Company or a policy had been issued him; and that the Benefit Association of Railway Employees had canceled its policy with him. None of the above information was given the Mutual Benefit Health and Accident Association, and to all of it it was entitled.

The evidence demanded a verdict for the defendant except for the small sum it tendered as a repayment of the premiums received by it on the policy, to wit: $36.40. The evidence showed without contradiction that some of the most material statements in the application were false (in fact their untruthfulness was admitted by the

applicant); were at the time known by the insured to be false; were not known to be false by the company or its agent; were made in order to procure the insurance; and were acted upon by the company and relied upon by it in the issuing of the policy. In his testimony at the trial the insured undertook to explain his admittedly false answers. He should have answered truthfully in his application, and there explained his answers in any way he saw fit, in order that the insurance company might have determined for itself whether it would decline the insurance altogether or would accept it at a higher rate.

In other words, we are of the opinion that the evidence conclusively shows that the plaintiff wilfully misrepresented and concealed material facts which the defendant had the right to consider in determining whether it would issue the policy to the plaintiff, and therefore that the evidence demanded a verdict in favor of the defendant. It follows that the court erred in overruling the motion for new trial.

*Judgment reversed. Broyles, C. J., and Guerry, J., concur.*

### ON MOTION FOR REHEARING.

MacIntyre, J. It is true that the insured and the doctor testified as to the insured's good health at the time of the application and for some ten years previous thereto. However, there is no law requiring an insurance company to insure every person in good health. It is purely voluntary on the part of the insurance company as to whom it will insure, whether rich or poor, large or small, Christian or heathen, whether he or she is in good or bad health (if the company knows it). To illustrate: an applicant might be the finest specimen of physical manhood in all the State and in perfect health, yet if the company, justly or unjustly, thought he had a propensity for getting hurt in order to collect insurance, or if it thought he had, or was endeavoring to obtain, an abnormal amount of insurance, which justly or unjustly aroused the suspicion that he was getting ready to commit suicide, or otherwise injure himself, in order that the beneficiary might collect the insurance money, the company could refuse the application; or the company could likewise refuse to enter into a contract for the reason that one or more companies had canceled his policies, for " 'In general, it may be said that the test, in determining whether questions contained in an application for insurance are material, is whether the knowl-

edge or ignorance of the facts sought to be elicited thereby would materially influence the action of the insurer.'" *Empire Life Insurance Co.* v. *Jones,* 14 *Ga. App.* 647, 656 (82 S. E. 62).

The insured's incorrect answer to the second part of question 8 that he had not made application for a policy of insurance in any other company when in truth he had done so five days before the date of the application for the policy in question, and about three weeks later received a policy from this other company, and his untruthful answer to question 9 that he had never had a policy canceled on him would themselves have voided the policy, for they were misrepresentations of material facts affecting the nature, extent, and character of the risk of the insurer. *Sovereign Camp Woodmen of the World* v. *Reid,* 53 *Ga. App.* 618 (supra). We recognize the rule in *Southern Life Insurance Company* v. *Wilkinson,* 53 *Ga.* 535, 549, that "to have asked one over forty years of age to state every 'affection,' 'local disease' or 'personal injury' which he might have had or endured in his lifetime, whether serious, or light and trifling, would be absurd. No one could possibly meet such a question, and it would make the catalogue nonsense as to all practical purposes when it appeared." However, in the instant case, even if it was a jury question whether the untruthfulness and incorrectness of the answers as to receiving at least thirty benefits between January 12, 1920, and January 23, 1933, in the amount of approximately $2000, and other untruthful statements that he did not receive treatment in the hospital and had not had malaria, grippe, or bronchitis, were or were not oversights, yet on account of their number and character and the time of their occurrence, he having admitted them on the trial, they would be undisputed corroborative facts tending to support the already established misrepresentations which were sufficient to void the policy, and the probative value of these undisputed misrepresentations which were incidental, increased in geometrical ratio with the number of material misrepresentations made by the plaintiff. The more the number, the less likelihood of their being the result of oversight. *Mutual Benefit Health & Accident Association* v. *Bell,* supra. "'The materiality of a concealment or representation of fact [of these collections of approximately thirty benefits etc.] depends, not on the ultimate influence of the fact upon the risk or its relation to the cause of loss [of the insured's leg], but on the immediate in-

fluence [of all these misrepresentations as to the many collections of benefits etc.] upon the party [the insurance company] to whom the communication is made, or is due, in forming his judgment at the time of the effecting of the contract.' " *Empire Life Insurance Company* v. *Jones, supra.* Another corroborative or undisputed fact or incident is that even after the plaintiff had lost his leg and had made application for the payment under the policy in question in this case, he represented that he had no other insurance. This was not true, for he received a payment of $1032 from this other insurance company on March 17, 1938, which was a short time after application for loss had been made to the defendant company on March 3, 1938. We think the evidence excludes every reasonable inference but one: that the misrepresentations materially affected the nature, extent, and character of the risk under the policy and voided it.

It is argued that the case of *Life Insurance Company of Virginia* v. *Fitzgerald,* 143 *Ga.* 725 (85 S. E. 913), is not controlling because the policy in that case provided for a forfeiture in case the insured had applied for other insurance, whereas no such provision appears in the instant case. It will be seen from an examination of the policy here that "strict compliance on the part of the insured and the beneficiary with all the provisions and agreements of this policy, and the application signed by the insured [and which was attached to the policy], is a condition precedent to recovery and any failure in this respect shall forfeit to the association all right to any indemnity." Therefore the motion is

*Denied. Broyles, C. J., and Guerry, J., concur.*