## SHEDDEN *v.* HEARD.

1. If a general agent of a life-insurance company, who appoints agents to work for the company under his supervision and to report to him, discounts a promissory note taken by them from an applicant for insurance for a premium upon a policy to be issued and delivered to the applicant, such general agent can not, when he brings an action upon the note, set up that he was a bona fide purchaser thereof for value before maturity, and thus cut off a defense that the plaintiff acquired the note before the delivery of the policy, and that the consideration of the note failed because the policy delivered was not of the kind for which the application was made.

2. If, however, the applicant was able to read the application presented for his signature and with full opportunity so to do negligently failed to read it, and signed without so doing, and if the policy actually issued and delivered to him was one exactly of the kind described in the application, he could not set up in defense to such an action that the agent at whose instance he signed the application, by fraudulently representing its contents, induced him to sign an application which he really did not intend to make. In such a case the general agent would be authorized to act upon the assumption that the application was freely and voluntarily executed.

3. When a duly approved copy of a writing alleged to be inaccessible was actually admitted in evidence, it is immaterial whether error was or was not committed in admitting testimony offered to establish the fact of inaccessibility.

4. Where such a copy is in evidence, parol testimony as to its contents is inadmissible.

5. The direction of the verdict for the defendant was erroneous.

Argued March 13, — Decided April 7, 1900.

Complaint. Before Judge Reese. Wilkes superior court. May term, 1899.

*Samuel H. Sibley,* for plaintiff.
*Colley & Sims,* for defendant.

LEWIS, J.   R. F. Shedden brought suit in the county court of Wilkes, against M. L. Heard Jr., on a promissory note for $105.50, dated July 5, 1899, payable "to the order of myself," and signed by the defendant. This note was indorsed by the defendant, and by G. W. Byington and G. T. Hodgson. The answer of the defendant admitted giving the note, that it was past due, and that he failed and refused to pay the same, or any part thereof. He denied the other allegations in the petition, namely, that plaintiff was a bona fide indorsee for value of the

note, and that defendant was indebted to plaintiff in the sum sued for. In his plea he further alleged that the note was given by him to Byington and Hodgson, the indorsers thereon, who were the agents of the New York Mutual Life Insurance Company, soliciting business for said Company; that the plaintiff in this suit was, at the time of the giving and indorsement of the note, the general manager of all the business and agents of said company in this State; that defendant gave the note in settlement of the first premium on a policy of life-insurance in said company for $5,000, the agents agreeing to deliver him a policy for said sum, which by its terms, upon the payment of $105.50 annually, was to be fully paid up at the end of twenty years, with the privilege of defendant to withdraw said sum at said time, and an accumulated interest in the dividends amounting to $1,000 more; that when the policy was received by defendant it was not the kind contracted for, and defendant at once returned it with the statement that the same was not of the kind applied for; that the policy sent defendant required payments for life of defendant, and no money to be paid until death. He therefore pleaded a failure of consideration for the note, and charged that plaintiff had notice that this note was for a premium for said policy, and he knew that defendant had a reasonable time in which to inspect the policy, and for him to buy the note before this time had expired showed fraud and bad faith, and defendant asked that plaintiff be called upon to prove that he was a bona fide purchaser for value of the note. A general demurrer was filed to this answer by plaintiff's counsel, which was overruled by the court; on which error is assigned in the bill of exceptions.

It appears from the evidence that the plaintiff was a general agent for the company for the State of Georgia, and that Byington and Hodgson were engaged in soliciting life-insurance for the company, and they were employees of the company by appointment of plaintiff. The defendant admitted signing a written application for the policy, and delivering the same, with the note sued on, to Byington and Hodgson. He says he did not read the application, but relied on the representations made by these two agents as to its contents; that one of them read or pre-

tended to read this application to him, and, according to the way he read it, it called for the kind of policy which his answer sets forth he had contracted for. After receiving the policy he again saw these agents, who admitted to him that it was not the policy he asked for, but a better and cheaper one; and several witnesses were introduced by him whose testimony tended to prove such admissions on the part of these two agents. On the other hand testimony was introduced by the plaintiff, denying any such misrepresentation, and tending to show that the nature of the application he signed and of the policy he received was thoroughly and correctly explained to the defendant. It appears from the testimony that the company did not issue policies until the first premium was paid in cash. These policies were issued from the office in New York. This note, it seems, was taken for the purpose of negotiating the same, and raising the cash thereon to send with the application in payment of the premium on the policy. The note was carried by these sub-agents to the plaintiff, who discounted the same in bank, and sent the money with the application to the company in New York. The policy was returned to the general agent, who sent the same to the applicant. It was returned by him with the claim that it was not the policy he applied for. It was again sent to defendant by the agent, but at the trial it seems was in the possession of defendant, after an interchange between him and the agent had been made two or three times. Testimony was introduced in behalf of plaintiff, to the effect that he paid his individual money for the note, and forwarded it to the company, and that if he failed to recover thereon it would be his loss, as the company had no interest whatever in the note, and had nothing to do with the transaction in reference to the negotiation of same. When plaintiff purchased the note, he had no notice whatever of any defense thereto, but relied on the application signed by the defendant, contending that the policy issued by the company and delivered to the defendant was exactly in accordance with his application. The record shows that an effort was made by defendant's counsel to obtain this original application for use on the trial of the case, but that it was with the company in New York. It seems the company would not

deliver it, and defendant's counsel called upon plaintiff's coun-
sel to produce a copy of the same.    What purported to be a
copy was produced, which it seems was sworn to be a correct copy
in the depositions of plaintiff, which were read in evidence.
This copy was introduced in evidence by plaintiff in rebuttal,
after defendant had been allowed to introduce parol testimony
touching the contents of the application he signed, or intended
to sign.    After the close of the testimony the court directed a
verdict for the defendant, and plaintiff brings the case here by
bill of exceptions, alleging error in various rulings of the court
pending the trial.

1. It is admitted by counsel for defendant that the court erred
in directing a verdict in his favor.    Even upon the theory that
the defense set up and supported by evidence introduced in be-
half of the defendant was a valid one as to this action, the court
clearly erred in directing a verdict for the defendant, as there
was a conflict in the evidence touching the truth of this defense.
It was contended by counsel for plaintiff, that the fact plaintiff
knew, when this note was purchased, for what consideration it
was given, can not be considered as charging him with any no-
tice of a failure of that consideration.    This is unquestionably
true as a general principle of law; but we do not think it is ap-
plicable to this case.    It appears from the record that the plain-
tiff, when he purchased this note, not only knew of its considera-
tion, but also knew that at that time the policy applied for, and
for which the note was given, had not been delivered to the
maker; for the plaintiff himself forwarded the money to the
company in order to get that policy.    We think, therefore, with
a knowledge of these facts, the plaintiff, when he purchased the
note, manifestly incurred the risk of the defendant's not re-
ceiving the policy for which he applied; and if the company had
not sent to the applicant such a policy, but one entirely different,
the plaintiff in this case could not have pleaded that he was an
innocent holder as against this defense.    For instance, if one
should purchase a negotiable note before maturity for value, and
at the time of the purchase knew not only its consideration, but
further knew the fact that the article or thing of value, for which
the note was given, had not been delivered to the maker, such

a purchaser would necessarily incur the risk of a failure of consideration of the note by a possible non-delivery of the thing purchased. While the answer in this case does not specifically say that the plaintiff bought this note when he knew the policy had not been delivered, and probably was open to special demurrer on this ground, yet the answer does contain allegations from which such knowledge might be inferred on the part of the general agent of the company; and we, therefore, can not say that the court erred in overruling the general demurrer. This knowledge, however, upon the part of the plaintiff was uncontradicted. It clearly appeared from the testimony, and had there been a special demurrer it could have been readily met by amendment.

2. Whether or not the defense to this action would constitute a valid one at law as against the company that issued this policy, should it have undertaken to collect this note by suit, is not a question involved in this case, as we view it; and therefore we do not enter into its discussion. The plaintiff sues on this note in his individual capacity. It appears from the record that it was his private investment. As has been pertinently asked by counsel for plaintiff in his argument, "Does the accidental and collateral fact that he is the agent of a company for which another agent takes a note make him constructively cognizant of all that the other agent knows, when he buys the note for himself? It is not disputed that notice or knowledge in the agent Hodgson or Byington was notice to the principal, the company, and notice to the general agent, Shedden, when seeking to enforce the company's rights. The question is, can Shedden not buy any negotiable paper, or take any conveyance of any kind from his company, innocent of all actual notice, without being charged with all that every agent of the company knew about it?" It is true that the position of plaintiff, as general agent of the company, may put him where he would, in law, be chargeable with more knowledge of certain facts than a mere stranger. For instance, in the present case, this position charged him with a knowledge of the fact that he was buying a note before the maker had received the consideration for which it was given. But it does not follow from this that when he acts in his individ-

ual capacity, on account of his being an agent of the company he is also chargeable with the knowledge of other agents, of whose misrepresentations or fraudulent conduct he knows nothing whatever. We conclude, therefore, that if this plaintiff, when he bought the note in his individual capacity, for value and before maturity, also held an application by the defendant for a certain policy, and if the policy actually issued and delivered to the applicant was one exactly of the kind described in the application, the defendant could not set up in defense to such an action that other agents, at whose instance he signed the application, fraudulently induced him to sign one he did not intend to make. The plaintiff had a right to presume that the application was freely and voluntarily executed. A party can not put a negotiable note in circulation based upon an application which he admits he has signed, and then afterwards claim, against an innocent purchaser of such a note, that it was procured by the fraudulent conduct of others; and we can not see why the bare fact of such a purchaser being also the agent of the company, when dealing for himself, would charge him with any more knowledge than would be charged to any other person.

3, 4. Error is assigned in the bill of exceptions, on the admission of certain testimony tending to show the inaccessibility of the written application made by the defendant for the policy; and in admitting parol testimony in behalf of the defendant as to the contents of this writing. It appears from the record that the original paper was beyond the jurisdiction of the court, being in the possession of the company in New York, and that that company has no interest in this case; but after the introduction of this evidence, a copy of this written application was introduced in behalf of plaintiff, which was verified under the seal of some notary in New York as being a true copy of the original. That fact, in itself, we hardly think was sufficient to establish a copy, for the reason that this official could not have known, of his own knowledge, whether the paper copied was the original or not. There does not appear, however, to have been any objection to its admission, nor does it appear that it was admitted solely upon the idea of this official certificate attached to it. A copy of this application had been called for by counsel for de-

-fendant, and this particular copy introduced, we think, was admissible upon the testimony of the plaintiff himself, who had had the original, and who testified that the paper in evidence was a copy of the same. Besides, the defendant did not pretend to know, of his own knowledge, the contents of the application he actually signed. He had never read it, and only swore to representations made to him by others of its contents. In the light of the record, we think the copy was properly admitted, and it then constituted the highest evidence procurable. It appears, then, that secondary evidence, from necessity, had to be substituted for stronger and better proof. Section 5173 of the Civil Code declares: "There are degrees in secondary evidence, and the best should always be produced. Thus a duplicate is better than a copy, and an examined copy than oral evidence." When, therefore, this copy was introduced in evidence, we think the court should have sustained the motion of plaintiff's counsel to rule out the parol testimony introduced in behalf of the defendant in reference to the contents of this paper. The introduction of this copy renders it immaterial to consider the question whether or not the court erred in originally admitting parol testimony on this subject.

5. From the above it clearly follows that the exception assigned in the bill of exceptions to the direction of a verdict for the defendant given by the court below was well taken.

*Judgment reversed. All the Justices concurring.*