25532.  CURRY *v.* WASHINGTON NATIONAL INSURANCE COMPANY.

DECIDED NOVEMBER 20, 1936.

*Joseph B. McGinty,* for plaintiff.   *J. T. Sisk,* for defendant.

STEPHENS, J. Lula Curry sued Washington National Insurance Company to recover for a disability caused from paralysis, and alleged as due under an accident and health policy dated January 18, 1935, containing the following provisions: The company, "in consideration of the statements in the application herefor, copy of which is endorsed hereon, and which is made a material part hereof, and the payment in advance of the initial premium of $5, does hereby insure Lula Curry . . against loss resulting directly and independently of all other causes from bodily disease or illness contracted and having its beginning after thirty days subsequent to date of policy. . . No statements made by the applicant for insurance not included herein shall avoid the policy or be

used in any legal proceedings hereunder. No agent has authority to change this policy or to waive any of its provisions. . . Notice to or from any agent or knowledge acquired by him shall not be held to effect a change or waiver of this policy or waiver of its conditions. The falsity of any statement in the application, materially affecting either the acceptance of the risk or the hazard assumed hereunder, or made with intent to deceive, shall limit the company's liability hereunder to the return of the premiums paid thereon. . . There shall be no liability hereunder for any death, disability, or other loss resulting from such injury due to accident occurring prior to date of policy nor from such disease or illness contracted or having its beginning prior to thirty days after the day policy is dated." The petition alleged various statements by agents of the company on the occasion of procuring the application for the policy; that in signing the application the plaintiff touched the pen; that she could neither read nor write; that one of the agents took two hams from her kitchen for the first premium of five dollars, promising that he would also write her husband; that she received the policy through the mail, and paid the premiums through May 2, 1935; that she was in good health when the policy was delivered; and that on March 6, 1935, she suffered a stroke of paralysis by which she was totally and permanently disabled. She claimed an indemnity of $250, and damages and attorney's fees on account of the defendant's bad faith. Other allegations are not material. The defendant demurred specially to the petition. The court sustained sixteen grounds of this demurrer, and the plaintiff excepted. The defendant answered, denying liability in any amount, and (by amendment) setting up that the disease had its beginning prior to thirty days after the day the policy was dated, and therefore was not insured against.

On the trial the plaintiff testified that she thought she was in good health when the policy was delivered to her; that she had signed the application with her mark, not being able to read or write, but she did not know what was in the application; that she told the agents who wrote the application that a doctor had told her several years previously that she had high blood pressure; that one of the defendant's agents examined and felt of a goitre on her neck, and questioned her about it, and she told him that it bothered her only at certain times; and that she had paid the pre-

miums through May 2, 1935. A physician testified that he saw the plaintiff on March 7, 1935, after she had suffered a stroke of paralysis, and she was in a dangerous condition due to goitre and high blood pressure; that in his opinion the stroke was caused by high blood pressure; and that she undoubtedly had high blood pressure in January, 1935, since that is a condition which develops slowly. The plaintiff introduced the application which contained questions about the medical history and state of health generally of the applicant, which questions were answered "no exception," and a provision that "the company is not bound by any statement or knowledge of any statement made to or by any agent of the company, unless written on the application." At the end of the plaintiff's evidence the court on motion directed a verdict for the defendant. The plaintiff's motion for new trial was overruled, and she excepted, assigning error also on the sustaining of the special demurrer to the petition.

The controlling question is whether the knowledge of the defendant's agents that the plaintiff had high blood pressure at the time of the application should be imputed to the defendant and render the policy binding, notwithstanding the provision that it would not take effect in case the insured was not in good health at the time the policy was delivered. Ordinarily knowledge of an agent of a fact affecting the risk is imputed to the company, and it is held to have waived a condition which prevents the insurance from taking effect, if it issued the policy after knowing that the insured was not at the time in good health. But where, as in this case, the application for the policy has the special provision above quoted, the company is not chargeable with notice of false answers fraudulently inserted in the application by its agent. *National Accident & Health Ins. Co.* v. *Davis,* 179 *Ga.* 595 (176 S. E. 387). In the case just cited the applicant for insurance was not an illiterate. In the present case the applicant was unable to read or write, but made no effort to have the application read or otherwise explained to her. An illiterate person who signs a paper without knowing what is in it is generally bound by it. 7 Elliott on Contracts, 192, § 110, n. 7; 7 Williston on Contracts, 51, § 35. It is evident from the plaintiff's testimony that she knew that she was signing an application for an insurance policy, and she only claims ignorance as to its particular provisions. Besides, she ac-

cepted the policy, paid premiums on it for several months, and finally brought suit to enforce it. She alleges that the agents misrepresented the benefits which the policy would contain. This might be a good ground for a suit to cancel the policy and recover the premiums paid, but the suit here was not of that nature, and the company was protected against misstatements by its agents in procuring the application by an express provision which has been held valid by the Supreme Court. It is claimed for the plaintiff that the company, by receiving premiums after knowing of the plaintiff's illness, waived its defense. Under the law and the facts of this case, the contention is without merit. It is suggested in the brief for the plaintiff that the direction of the verdict for the defendant was error, because the plaintiff was entitled to recover at least the premiums paid by her, under the Code, § 56-519. The policy expressly provides for the recovery of the premiums when the policy is avoided because of false statements by the insured; but the pleadings were not adapted to enforcing this liability.

A number of allegations were stricken from the petition on special demurrer on the grounds of irrelevance and immateriality. These demurrers were properly sustained. If all the stricken allegations had been left in the petition, the result of the case would not have been different. Many of those allegations are insisted on by the plaintiff as showing fraud by the agents in the procurement of the policy. But the suit was brought, not to avoid the policy for fraud, but to enforce it. Various grounds of the motion for new trial set up that the court erred in rejecting testimony in support of the allegations which had been stricken on special demurrer. As the court had already decided that the matters in question were irrelevant and immaterial, it was not error to overrule these grounds of the motion for new trial. A special ground of the motion claimed error by the court in disallowing an amendment to the petition, which charged: "Plaintiff shows that when the said agents of the defendant insurance company solicited the policy sued on as set out above, said agents were put on notice verbally by the plaintiff that the plaintiff had some years before January, 1935, had high blood pressure." From what has been said it follows that the court did not err in disallowing this amendment.

*Judgment affirmed. Jenkins, P. J., and Sutton, J., concur.*