32882. STATE FARM MUTUAL AUTOMOBILE INS. CO. *v.* CATES *et al.*

DECIDED MARCH 9, 1950.

*Sam J. Welsch,* for plaintiff in error.

*James T. Manning, Walker & Henderson, Luther C. Hames,* contra.

SUTTON, C. J. Kenneth Cates sued State Farm Mutual Automobile Insurance Company and Bobby Wilbur, in Cobb Superior Court, and alleged that the defendants contracted with the plaintiff to repair a certain automobile, owned by the defendant, Bobby Wilbur, and that the defendants promised the plaintiff

to pay for said work and material upon the completion thereof, and that the contract on the part of the defendant insurance company was made by Herbert W. Clegg, its agent, who had authority from it to make the contract in its behalf; and that relying upon the promise of the defendants to pay him, he repaired the automobile. The plaintiff's bill for repairing the automobile, in the sum of $251.44, was attached to the petition and was made out in the name of Bobby Wilbur.

The defendant Wilbur filed an answer, denying liability, but he failed to appear and defend at the trial of the case, and a verdict was directed against him. The defendant insurance company answered and denied liability. It contended that it did not make any contract with the plaintiff, that it did not promise to pay him anything, and that it never authorized or ratified the account sued on. A verdict was rendered against both defendants, the insurance company made a motion for a new trial, which was overruled, and it excepted.

The plaintiff testified as to the amount and correctness of the account sued on, and as to why he repaired the automobile. While testifying he said: "I met Mr. Clegg, who represents the insurance company. . . They had a place here in Marietta which is across the square over here. I believe the name was the State Farm Mutual Automobile Insurance Company. . . When I talked to Mr. Clegg he says, 'That Wilbur boy has had a wreck and he wants you to fix it.' He says, 'Our company has to have it fixed, or they want to have it fixed,' and he says, 'That is their privilege.' He says, 'The Turner boys on the Bell's Ferry Road has made an estimate on the car, but the Wilbur boy wants you to repair his car.' And he says, 'He will bring the car over,' and 'Give him an estimate when you can, as soon possible.'" This witness then testified that he told Clegg it would be impossible to make an accurate estimate without disassembling the car, as it was so badly bent up, and that he would have to find out what the parts would cost. He said: "Mr. Clegg says, 'Fix me up a copy and let me send it in to my company.' After two or three weeks or a month I called Mr. Clegg and asked him about a check and he says, 'Our company doesn't have to pay it.' He says, 'They find that the other party is to blame for the wreck. . .'" He testified that the car had been re-

paired and turned over to Wilbur at that time; that he had done business with the insurance company before that and had received pay for the other job; that Bobby Wilbur drove the automobile to his shop and told him to repair it, but that Herbert Clegg had asked him before and after that to give an estimate of what it would cost to repair the car. The witness said: "Other than that he is a representative of the State Farm Mutual Automobile Insurance Company, I don't know of my own knowledge any relationship between Mr. Herbert Clegg and that company. As to whether or not I say of my own knowledge what his relationship is to the company—well, other than making estimates for him, and being in the office over there, and seeing him around getting estimates on wrecked cars, he was representing the company, and that is all I know. And then I know that he represented a wrecked car before, and I got my money all right on that. That was in getting estimates. As to whether that was all he did, in getting the estimates—well, I gave him a copy of the estimate, and I got the money for the wreck through his company. That is all he did, just getting the estimates. And so far as I know of my personal knowledge that was the only authority he had. . . When Bobby Wilbur, the owner of that automobile, drove it into my shop he [Wilbur] said, 'Repair it,' and I started repairing it."

Herbert Clegg testified that he was an insurance salesman for the State Farm Mutual Automobile Insurance Company and that he sold and serviced automobile insurance; that servicing includes collecting information and reporting it to the company when automobiles were damaged or wrecked. He said: "As to my collecting information, that means that in the event of an accident I go out and get all the information I can collect and turn the case in and report it to the adjusting department of the company. My duties are confined to that. . . I heard Kenneth Cates say that I got an estimate from him over there. I did that. I also got an estimate from someone else. I always get two or more estimates from different parties. . . I do not go out as an adjuster to settle claims for the company, or as an insurance claim settler. . . I don't determine whether they are or are not liable; I do get the information, but I do not determine who is liable. The company has regular insurance

adjusters that pick up the other side of it and tell their people what their liability is on it. . . I report the loss to the State agents instead of sending it to the home office, and from that point on they work on it. Boiled down, I would say that I just send them information. I do not have authority to settle claims. I did not tell Mr. Cates over there that this company would pay for this repair bill. I did not go there and authorize him to repair the automobile in behalf of the defendant State Farm Mutual Automobile Insurance Company. . . I did get Mr. Cates' estimate and send it in; and I also sent in another estimate. . . I told him just as plain as I possibly could that I was there to collect information only, with no obligation whatsoever to do the paying. I did not tell him that I had to have it fixed for the company, and that the company and I had to have it fixed where the injured party wanted it fixed. I might have made the statement, I don't recall about it, that if we were liable we would have to pay whatever the injured party had to pay; but I did not commit the company myself in any respect."

The plaintiff's right to recover against the insurance company depends on an alleged oral promise by its agent to pay the plaintiff for repairing a certain wrecked automobile, it being contended by the plaintiff that the agent had authority from the insurance company to make the agreement and to have the car repaired.

The uncontroverted evidence shows that Herbert Clegg, agent for the defendant company, had authority to sell and service automobile insurance, and that servicing included collecting information and reporting it to the company when a car was damaged or wrecked, that is, he had authority to get estimates as to costs for having the damaged car repaired and to report it to the adjusting department of the company for consideration, Clegg as such agent did not have authority to settle claims for repairing cars, but this was done by adjusters for the company; that Clegg told the plaintiff at the time he asked him to make an estimate of the cost for repairing the Wilbur car that he could only collect information with respect to the damaged car, get an estimate of the cost of repairing, and send it to the company for attention; that he had no authority to do the paying or to obligate the company as to the same.

It is a well-settled principle of law that the agent can only bind

his principal within the scope of his agency, and that the principal will not be bound by the acts of an agent beyond the scope of his authority, where the person dealing with the agent had notice of such limitation. According to the evidence in the present case, the agent of the insurance company had no authority to pay claims for the company or to obligate the company in this respect, and the plaintiff was so informed by such agent. The fact that the agent here had received and sent in to this company an estimate by this plaintiff of the cost of repairing some other automobile, which had been paid by the company, would not be a circumstance that would tend to bind the company in the present case, under the facts as shown by the record here.

The verdict for the plaintiff was not authorized by the evidence, and the trial judge erred in overruling the defendant's motion for a new trial.

*Judgment reversed. Felton and Worrill, JJ., concur.*