### 39632. KENNESAW LIFE & ACCIDENT INSURANCE COMPANY v. HUBBARD.

DECIDED SEPTEMBER 6, 1962—REHEARING DENIED
SEPTEMBER 20, 1962.

558

*Phillips, Brinson & Ham, H. A. Stephens, Jr., Smith, Field, Ringel, Martin & Carr,* for plaintiff in error.

*W. B. Mitchell,* contra.

EBERHARDT, Judge. ■ The evidence disclosed that at the

time of making the application and for a number of years prior thereto both the insured and one of his sisters had suffered from sickle cell anemia and that in the opinion of the doctors who had treated them their condition was one of severity. The sister had suffered a stroke because of it, and as a result was obliged to walk with the use of crutches. The insured had experienced critical episodes at fairly regular intervals, sometimes requiring hospitalization and blood transfusions. Plaintiff admitted in his testimony that he had been informed by the doctors as far back as 1954 concerning the condition of his daughter, and attending physicians testified that the condition of the insured was discussed with the parents in 1950, when it was first learned that the son was suffering from sickle cell anemia, and at other times prior to the date of the application. Thus there was a misrepresentation by the plaintiff, both when he stated that the sister was in good health and when he stated that the insured was in good health.[2] Indeed, after he signed the application for the insurance on October 25, 1956, the son was treated by Dr. A. W. Bramlett on November 8, 1956, for sickle cell anemia, having low hemoglobin; again on November 10, 1956, for the same thing, when he was given a blood transfusion, and on November 13.

In the face of that, plaintiff again misrepresented the facts to the medical examiner on December 28, 1956, when he stated that the insured had been treated *only for a cold and sore throat, and that he had never suffered any other illness or disease.*

Instances of crisis, requiring hospitalization and transfusions

---

[2] If the only misrepresentation here had been in the answering of the question as to whether the insured or his sister were "in good health," a jury question might have been presented, since that is a general, variable and relative term. See *Gilham v. National Life &c. Ins. Co.,* 104 Ga. App. 459 (122 SE2d 164); *Guaranty Life Ins. Co. v. Martin,* 44 Ga. App. 545 (1) (163 SE 288). But it is to be observed here that in addition to those misrepresentations the applicant represented that his son had never had any illness, disease, injury or operation other than a sore throat and chest cold. Thus there was a *specific* and material misrepresentation, taking this case out of the rule of *Gilham, Martin* and others similar.

had occurred a number of times prior to the making of the application, and since the child was living in the home with the father at all times, plaintiff must have been fully aware of the matter. The sickling was severe, and, as was testified by the doctors who treated the insured, of a character that was calculated to be fatal.

However, even had plaintiff been unaware of the seriousness of his son's condition, the result would be the same, since a misrepresentation that is material to the risk will void the policy whether made in good faith or not. *Preston v. National Life &c. Ins. Co.*, 196 Ga. 217 (3) (26 SE2d 439, 148 ALR 897). Representations in the application and in the medical blank or form occupy the same status and have the same effect. *Supreme Conclave Knights of Damon v. Wood*, 120 Ga. 328 (1) (47 SE 940).[3]

A vice-president of the defendant insurance company testified

_____

[3]The first comprehensive insurance code was enacted in 1912 (Ga. L. 1912, p. 119 et seq.), codified in Michie's Georgia Code 1926 Anno., and in Park's Anno. Code as Code §§ 2387 (1) et seq. and later in the Code of 1933 under Title 56. It was amended in 1914 (Ga. L. 1914, p. 99 et seq), in 1917 (Ga. L. 1917, p. 103), in 1923 (Ga. L. 1923, p. 113), in 1927 (Ga. L. 1927, p. 223) ; in 1929 (Ga. L. 1929, p. 241), and perhaps at other times. A new and comprehensive insurance code was enacted in 1960 (Ga. L. 1960, p. 289 et seq.).

Sec. 2479 of the 1926 Code provided: "Every application for insurance must be made in utmost good faith, and the representations contained in such application are considered as covenanted to be true by the applicant. Any variation by which the nature, or extent, or character of the risk is changed will void the policy."

And Sec. 2480 provided: "Any verbal or written representation of facts by the assured to induce the acceptance of the risk, if material, must be true, or the policy is void. If however, the party has no knowledge, but states on the representations of others, bona fide, and so informs the insurer, the falsity of the information does not void the policy."

Sections 56-820, and 56-821 of the 1933 Code carried forward the same provisions.

Sec. 56-908 of the 1933 Code provided, inter alia, ". . . after a policy shall be issued on the life of such person, the beneficiary . . . shall be entitled to collect the amount of

unequivocally that if the true facts had been disclosed they would have been taken into consideration in accepting or rejecting the application, and if accepted, in determining the amount of the premium. Dr. Stuckey, one of the attending physicians, testified that "in severe cases [of sickle cell anemia] they usually do not survive late childhood," and that in the case of the insured his affliction was "in my opinion severe." Admittedly the insured died from it. The materiality is clearly established.[4]

■ It is urged that since the insurance company obtained a medical examination[5] of the insured before issuing and delivering

---

such policy . . . when it shall mature, unless the applicant or beneficiary shall have been guilty of actual fraud or shall have made material misrepresentations in procuring such policy, which representations change the character and nature of the risk. . ."

These provisions were of force and effect when the contract here was written, but other and different provisions became effective when the insurance code of 1960 was adopted. See *Code* §§ 56-2407, 56-2409 (Ga. L. 1960, pp. 289, 659, 660).

[4]"The truth and materiality of representations are generally questions of fact, for determination by the jury; but where all the testimony relating to a question of fact excludes every reasonable inference but one, the issue becomes an issue of law, for determination by the court." *Empire Life Ins. Co. v. Jones*, 14 Ga. App. 647(3), 648 (82 SE 62).

[5]Under the insurance code of 1912 (Ga. L. 1912, pp. 119, 130) later codified in Michie's Code of 1926 as Code § 2501(1), it was provided, inter alia, that: "All insurance companies . . . writing life insurance in this State . . . shall be required to have made a *strict medical examination* of each and every person applying for life insurance, . . . and after a policy is issued on the life of such person, the beneficiary . . . shall be entitled to collect . . . when [the policy] matures, unless the applicant or beneficiary has been guilty of actual fraud or has made material misrepresentations in procuring such policy . . ." (Emphasis supplied).

The requirement for medical examination was eliminated by the act of 1927 (Ga. L. 1927, p. 223; Code of 1933, § 56-908). Nor was any such requirement included in the insurance code

■

the policy it was in position thereby to obtain full information as to the insured's physical condition and that this works a waiver of any misrepresentation that may have been made, or an estoppel against the company to assert such as a defense to an action upon the policy. This proposition has been adversely determined by the Supreme Court in *Lee v. Metropolitan Life Ins. Co.*, 158 Ga. 517 (3) (123 SE 737). Neither the obtaining of an examination of an applicant nor the failure to obtain one will work either a waiver or an estoppel in the absence of a showing that the true facts were known to the insurance company when it accepted the application and delivered the policy. See *Wiley v. Rome Ins. Co.*, 12 Ga. App. 186 (76 SE 1067). "Waiver is the *intentional* relinquishment of a *known* right." *Estes v. Standard Fire Ins. Co.*, 66 Ga. App. 775, 778 (19 SE2d 35). Accord, *Metropolitan Life Ins. Co. v. Dodd*, 41 Ga. App. 243, 246 (152 SE 850); *Metropolitan Life Ins. Co. v. Jones*, 47 Ga. App. 687, 689 (171 SE 315). And see *Liverpool &c. Co. v. Hughes*, 145 Ga. 716 (89 SE 817); *Guaranty Life Ins. Co. v. Pughsley*, 57 Ga. App. 588, 591 (196 SE 265). Knowledge of the true facts is likewise essential in a situation of this kind to give rise to an estoppel. *German American Mut. Life Assn. v. Farley*, 102 Ga. 720(3) (29 SE 615). If there were any estoppel arising out of the circumstances here it would work against the plaintiff, and not against the defendant, for it is the plaintiff who has failed to state material facts and has misstated others. "[Estoppel] arises when one by acts, representations, or admissions, or by his silence when he ought to speak out, intentionally or through culpable negligence induces another to believe certain facts to exist and such other rightfully relies and acts on such belief, so that he will be prejudiced if the former is permitted to deny the existence of such facts." Carter v. Curlew Creamery Co., 16 Wash. 2d 476 (134 P2 66, 74).

*The trial court erred in overruling the motion for judgment non obstante veredicto, and its judgment is reversed with direction that judgment for the defendant be entered pursuant to the motion. Carlisle, P. J., and Russell, J., concur.*

of 1960 (Ga. L. 1960, pp. 289 et seq.), now Title 56 in the Code as revised in 1960.