44809. PRUDENTIAL INSURANCE COMPANY OF
AMERICA v. PERRY.

ARGUED OCTOBER 6, 1969—DECIDED MARCH 19, 1970—
REHEARING DENIED APRIL 3, 1970—

*Jones, Cork, Miller & Benton, Edward L. Benton, Fulcher, Fulcher, Hagler, Harper & Reed, J. Walker Harper,* for appellant.

*Sanders, Hester, Holley, Ashmore & Boozer, Thomas R. Burnside, Jr., Richard A. Slaby,* for appellee.

EBERHARDT, Judge. Plaintiff testified in a deposition that when the company's agent took the application he had related to the agent all of the facts and details concerning his wife's eye trouble, including the names of all doctors who had treated her for it and that the agent, who was writing in the answers as the questions were asked, simply failed to enter the information; that he had asserted the company would not require or need all of the information and that an entry that she had been seen by Dr. J. Fair in December, 1967 for an "eye check-up" would be sufficient.

In his deposition the agent denied that Mr. Perry had given any information that was not fully reflected in the answers to the questions, and that the answers had been written as given him by the applicant. He denied having told Mr. Perry that anything less than the whole and full information would suffice.

■ It should be observed that the *applicant is bound by the answers* recorded on the application, whether written by him or by the agent, absent any fraud on the part of the agent in deceiving him as to what was in fact written down as answers, or in preventing him from reading and ascertaining what was written down. *Boykin v. Franklin Life Ins. Co.*, 14 Ga. App. 666 (2) (82 SE 60); *National Acc. &c. Ins. Co. v. Davis*, 50 Ga. App. 391 (2) (178 SE 320); *Curry v. Washington Nat. Ins. Co.*, 54 Ga. App. 590 (2) (188 SE 741); s.c., 56 Ga. App. 809, 810 (194 SE 825); *Rhodes v. Mutual Benefit Health &c. Assn.*, 62 Ga. App. 208, 210 (8 SE2d 685); *Mutual Benefit Health &c. Assn. v. Marsh*, 62 Ga. App. 425, 431 (8 SE2d 117); *Life & Cas. Ins. Co. v. Davis*, 62 Ga. App. 832, 834 (10 SE2d 129); *State Farm Mut. Auto Ins. Co. v. Anderson*, 107 Ga. App. 348 (1) (130 SE2d 144); *Jessup v. Franklin Life Ins. Co.*, 117 Ga. App. 389 (1) (160 SE2d 612); *American Liberty Ins. Co. v. Sanders*, 120 Ga. App. 1 (2) (169 SE2d 342); *Massey v. Cotton States Life Ins. Co.*, 70 Ga. 794; *Shedden v. Heard*, 110 Ga. 461 (2) (35 SE 707); *Heard v. Shedden*, 113 Ga. 162 (2) (38 SE 387); *Johnson v. White*, 120 Ga. 1010 (48 SE 426); *Stillson v. Prudential Ins. Co. of America*, 202 Ga. 79 (42 SE2d 121).

Insurance is a matter of contract, and the rules governing contracts and their making are applicable to insurance policies, including the application therefor. "There is no greater sanctity and no more mystery about a contract of insurance than any other. The same rules of construction apply to it as to other contracts." *Clay v. Phoenix Ins. Co.*, 97 Ga. 44, 53 (25 SE 417). Thus, the rule requiring an applicant to read the application and know what is in it before signing has its roots in the rule exemplified in *Hill v. Western Union Telegraph Co.*, 85 Ga. 425 (11 SE 874, 21 ASR 166); *Stoddard Mfg. Co. v. Adams*, 122 Ga. 802 (50 SE 915); *Truitt-Silvey Hat Co. v. Callaway & Truitt*, 130 Ga. 637 (2) (61 SE 481); *Weaver v. Roberson*, 134 Ga. 149 (67 SE 662); *Lewis v. Foy*, 189 Ga. 596 (6 SE2d 788); *Thomas v. Eason*, 208 Ga. 822 (3) (69 SE2d 729); *West v. Carolina Housing &c. Corp.*, 211 Ga. 789 (89 SE2d 188), and others of like tenor. Cf. *Cotton States Mut. Ins. Co. v. Booth*, 116 Ga. App. 410, 412 (157 SE2d 877). The reason for the rule is to

afford opportunity to correct any error and make it truthful, for when the applicant signs the application he is bound by the answers which have been inserted to the questions, absent any trick, artifice or the like used to procure his signature to it, and especially so when the application is attached to and becomes a part of the contract. *Mutual Benefit &c. Assn. v. Marsh*, 60 Ga. App. 431, 437 (4 SE2d 84).

Consequently, unless fraud against him appears, the answers on the application are Perry's answers, and he is chargeable with whatever effect they may have had. If they are incorrect, or if they are incomplete in any respect, the incorrectness or incompleteness is his.

We can find no fraud on the part of the agent as against Mr. Perry. The answers were written in before Perry took the application for reading and signing, and he signed the application with the answers as entered thereon. No deception is claimed as to what was in fact written down. No change was made in the answers after he signed the application. He admits that he can and did read over the application before signing it — though he now says that he read it "briefly." Nothing appears as to why he could not have taken all the time he wished to take in reading it, or that he was in any way prevented from doing so.

█ █ The question, then, is whether the answers were "complete and true" and whether *"all* statements and answers. . . are *complete* and *true*,"* as he represented and declared them to be in signing the application. Is there a misrepresentation?

Question 2(d) was as to whether Perry or his wife had "any known *physical impairments,* deformities, or *ill health not covered by other questions"* (the other questions asked specifically whether either of them had, or had been treated for any trouble with the heart, high blood pressure, lungs, kidneys, urinary system, stomach, intestines, tumors, cancer, diabetes, back or joints or nervous disorders). His answer to this question was "No." It is beyond any cavil that Mrs. Perry did have an impairment not listed. She suffered from a very serious eye condition and her doctors for some time had been looking for a suitable donor so that she might have a transplant of the cornea. In his deposition Mr. Perry admits that she was suffering with

this trouble some years before when he married her. She had a medical history due to this trouble running back some six or eight years which required consultation with and treatment from Dr. Jinkens in Charleston where she lived before her marriage, Dr. Lester and Dr. Calhoun in Atlanta, Dr. Jeans, Dr. Whelchel and Dr. Fair in Augusta. Can there be any doubt of the materiality of this misrepresentation? An operation was contemplated. Her eye condition was deteriorating. The doctors were waiting for a donor so that the condition might be improved with a transplant, but so serious and urgent was her condition that hospitalization and an operation were required before a donor was found. Indeed, she was *in the hospital* when this policy was delivered, and the expense there incurred is the subject matter of this litigation.

"I hereby declare that *all* statements and answers to the above questions are *complete and true.* . ." Were they? Although the applicant did state that there had been attendance of physicians within the last five years, in answering as to the "names and addresses of physicians, hospitals and other institutions," he listed Dr. Fair, asserting that Mrs. Perry had seen him for an "eye check-up" in December, 1967. If he had truthfully answered the question about "other physical ailments or ill health not covered," the application would have shown her to be suffering from keratoconus, which Dr. Fair described as a deterioration of the cornea from recurrent ulceration and from which she lost vision in the left eye. Dr. Fair had been treating her for the eye condition for some two years. *Other specialists who had treated her for the condition were not listed.*

It was asked in the application, in the event *any part* of question 2 were answered in the affirmative, "What are the following details?" and that applicant state the "condition, details and number of attacks," as well as the "duration of disability" and when there had been "complete recovery." This was a question as to whether she had been examined by or had consulted a physician during the past five years, and she answered that she had an appendectomy in December, 1967, by Dr. White, had given birth to children in May, 1964, and March, 1967, under the care of Dr. J. W. Thurman, had undergone a

"routine physical — O.K. — in the latter portion of May, 1967" by Dr. Thurman, and that she had an "eye check-up" with no days of disability in "Dec., 1967" by Dr. J. Fair. This statement was a clear asserting that "childbirth," a "routine physical" and an "eye check-up" were *all* that she had undergone in the last five years. This was represented to be *all* of the "details" for five years back! In *National Life & Acc. Ins. Co. v. Preston,* 68 Ga. App. 614 (23 SE2d 526) the applicant made similar representations when, in reply to a question as to whether she had consulted with physicians, she answered "Dr. Bailey, Newnan, Georgia, influenza, 1919, duration two weeks; recovery complete." It appeared that in truth and in fact she had been under treatment by Dr. C. C. Harrold for a keratosis on the lip, and that later she developed cancer of the mouth and tongue, from which she died. Pointing out that it had been stated in the application that "each of the statements contained herein is full, complete, true and without exception, unless such exception is noted, and made as inducements to the execution of a policy of life insurance for which this is an application," this court asserted that "[t]he true meaning of the answer to the question was that the applicant had *never* consulted any physician except Dr. Bailey of Newnan, Georgia, on one occasion in 1919, and then for influenza only." Cf. *New Zealand Fire Ins. Co. v. Brewer,* 29 Ga. App. 773 (8d) (116 SE 922).

The true meaning here, then, was that the applicant had not, during the preceding five years, consulted *any* physicians except Dr. White in December, 1967, and then for an appendectomy only, Dr. Thurman twice for childbirth and once for a "routine check-up;" and Dr. Fair in December, 1967, and then for an "eye check-up" only. What of Dr. Jinkens, Dr. Lester, Dr. Calhoun, Dr. Jeans and Dr. Whelchel — all eye specialists? Their treatment of her was not listed.

We concluded in *Preston's* case, "the evidence demanded a finding that the misrepresentation was material in that it was a concealment of a fact material to the risk and an inducement to the defendant to issue the policy. This is true although the evidence did not demand a finding that the keratosis was can-

cerous, or that it had any connection with the cancer that caused the death of the insured."

Here the applicant asserted in the application: "I declare that all the statements and answers to the above questions are *complete and true and include full particulars* of each and every part of Question 2, part II . . . I agree that the foregoing, together with this declaration, shall form a part . . . of the application for insurance."

The similarity is patent. We must conclude, as we did in *Preston,* that the representations were false—indeed they are admittedly so; she and her husband admit that she had seen five eye specialists other than Dr. Fair for treatment of her eye condition—and it follows that they are material to the risk as a matter of law. "Whether misrepresentations are material is ordinarily a question for the jury; but where, as here, the evidence excludes every reasonable inference except that they were material, no issue is presented upon that point for determination by the jury." *New York Life Ins. Co. v. Hollis,* 177 Ga. 805, 807 (171 SE 288); *Jefferson Standard Life Ins. Co. v. Henderson,* 37 Ga. App. 704 (141 SE 498).

Where, in an application for re-instatement an applicant asserted that he had not been attended by physicians within the past two years, when in truth he had been under treatment for a serious condition which, within 12 days after re-instatement required an operation, the Supreme Court held that "The misrepresentations he made were as to material facts, and the very facts upon which the insurance company would have refused a reinstatement of the policy were concealed," and held the issue to be one of law for the court. *Phillips v. New York Life Ins. Co.,* 173 Ga. 135, 138 (159 SE 696).

For other cases holding the misrepresentation as to past medical attention to be material as a matter of law see: *Northwestern Life Ins. Co. v. Montgomery,* 116 Ga. 799 (43 SE 79); *New York Life Ins. Co. v. Hollis,* 177 Ga. 805, supra; *National Life &c. Ins. Co. v. Gordon,* 183 Ga. 577 (188 SE 894); *Fair v. Metropolitan Life Ins. Co.,* 5 Ga. App. 708 (63 SE 812); *Aetna Life Ins. Co. v. Conway,* 11 Ga. App. 557 (75 SE 915); *Empire*

*Life Ins. Co. v. Jones,* 14 Ga. App. 647 (82 SE 62); *Life Ins. Co. of Va. v. Pate,* 23 Ga. App. 232 (97 SE 874); *Metropolitan Life Ins. Co. v. Shaw,* 30 Ga. App. 97, 99 (117 SE 106); *Puckett v. Metropolitan Life Ins. Co.,* 32 Ga. App. 263 (122 SE 791); *Sovereign Camp W.O.W. v. Parker,* 36 Ga. App. 695, 696 (138 SE 86); *Lee v. All States Life Ins. Co.,* 49 Ga. App. 718 (176 SE 811); *National Life &c. Ins. Co. v. Strother,* 53 Ga. App. 241 (185 SE 373); *National Life &c. Ins. Co. v. Preston,* 68 Ga. App. 614, supra, affirmed, 196 Ga. 217 (26 SE2d 439, 148 ALR 897); *Hamby v. American Ins. Co.,* 73 Ga. App. 531, 533 (37 SE2d 217); *National Life &c. Ins. Co. v. Hullender,* 86 Ga. App. 438 (71 SE2d 754); *General Assur. Corp. v. Roberts,* 92 Ga. App. 834, 838 (90 SE2d 70); *Kennesaw Life &c. Ins. Co. v. Hubbard,* 106 Ga. App. 556 (127 SE2d 845). And see *Vaughn v. National Life &c. Ins. Co.,* 189 Ga. 121 (5 SE2d 238).

As to whether there had been a mere "check-up" of the eyes in December, 1967, Dr. Fair testified: "My treatment involved the treatment of an active eye disease rather than what is usually known as an eye check-up," and as to what a "check-up" is generally understood to mean he asserted, "well it's a broad term, and has a general meaning, I suppose. It's to come in for a routine eye examination including a measurement for glasses. I suppose that's what is meant by an eye check-up." On December 7, 1967, she was told that she should have a transplant. She knew then that she was soon to be hospitalized. Her cornea was getting thinner and the urgency was increasing. She was back in Dr. Fair's office January 11, 1968, when the ulcer had healed but the cornea was thinning, and she went again to Dr. Lester in Atlanta. *The application for insurance was made January 15, 1968.* She was back in Dr. Fair's office January 26. It is inconceivable that her husband did not know the true facts on January 15. *Life Ins. Co. of Va. v. Pate,* 23 Ga. App. 232, 235, supra.

This answer indicating that she had done no more than see Dr. Fair for an "eye check-up" in December, 1967, was clearly a misrepresentation, in that the applicant asserts this to be a

full and complete answer. It was not. Was it with reference to a matter that changed the nature, extent or character of the risk? On the very face of it this must be answered in the affirmative. The risk insured against was hospitalization expense. No soundly operated company can be expected to insure against this risk for one who has just been informed by her doctor that her condition will require hospitalization — in this instance, as soon as a suitable donor of a cornea could be found. It is no different from the seeking of a life insurance policy by a subject who knows that he has an incurable and fatal malady, or who applies for life insurance on the day his surgeon makes arrangements for him to go into the hospital for a serious operation (*National Life &c. Ins. Co. v. Strother*, 53 Ga. App. 241, supra), or of a fire risk on a building when that next door is already in conflagration. The materiality is obvious.

In addition to the misrepresentations, there was a concealment of her true condition and of the names and addresses of *all* of the doctors who had treated her within the last five years, including the five eye specialists. This was not a mere oversight, or an "innocent omission." Mr. Perry asserts that he discussed this with agent Roberson. "This clearly manifests a conscious suppression of information which was sought by the company, even though he acted on the agent's suggestion, and which concealment, from the nature of the injuries specified, must be held as a matter of law material to the risk. Being able to read and write, as the contrary does not appear, he could have readily determined, when he signed the application, that it called for information as to past indemnities. Its preparation was on his own responsibility, and was not the act of one whose insertion of false and material matter or wilful concealment of material facts would be binding upon the company *under the contractual provisions agreed to.*" (Emphasis supplied). *Mutual Benefit Health &c. Assn. v. Marsh*, 62 Ga. App. 425, 431, supra. The company "might reasonably have waived an investigation under these answers, and yet insisted on a sifting examination if they had known" the true facts as to her eye trouble. *Jefferson Standard Life Ins. Co. v. Fendley*, 55 Ga. App. 618, 620 (190

SE 806). Moreover, "[w]hat the local agents stated the application meant was purely hearsay as to the determination of its real meaning." *Heard v. Shedden,* 113 Ga. 162, 165, supra. This is particularly true in the light of the specific limitation placed upon the agent's authority by the terms of this application. He had no authority to "modify" it, or to "bind the company by making any promise or representation." He could not bind the company by advising the applicant to omit full answers to the questions, or by a representation that a partial answer would be all that the company required.

That Dr. Fair may have been familiar with the wife's recurrent ulcers and former treatment and was, therefore, "a proper source of information," does not relieve the effect of the false representations, for "The provisions of the Civil Code (1910), § 4530, [now § 37-116] have no application to the subject of waiver as related to conditions imposing forfeitures in contracts of insurance. [Citations]." *Penn Mut. Life Ins. Co. v. Blount,* 165 Ga. 193 (2) (140 SE 496). Following that ruling this court held in *Penn Mut. Life Ins. Co. v. Blount,* 37 Ga. App. 756 (1) (142 SE 183) that a charge that "knowledge of the facts by the defendant which would put a reasonable person on inquiry is notice of facts to which the inquiry might have led," is an erroneous statement as to the law applicable to this situation, requiring a new trial. To the same effect see *Wiley v. Rome Ins. Co.,* 12 Ga. App. 186, 188 (76 SE 1067), citing *Orient Ins. Co. v. Williamson,* 98 Ga. 464 (25 SE 560). Cf. *Niagara Fire Ins. Co. v. James,* 48 Ga. App. 276 (172 SE 725). And see *Jefferson Standard Life Ins. Co. v. Fendley,* 55 Ga. App. 618 (2), supra.

Since the principle of *Code* § 37-116 cannot be applied against the company to support a claim of waiver, it must follow that it was authorized to rely on the applicant's answers, as made, and to issue a policy on the basis thereof. It was, of course, free to make inquiry of any one or all of the doctors, hospitals, etc., and if adverse information were developed from the inquiry or inquiries the company would be charged with notice of it. Prudential did make inquiry of a doctor, who had attended Mrs. Perry twice in childbirth and had given her a "routine physical,"

but no adverse information was brought to light. On hindsight, of course, it appears that it might have been better had the company made inquiry of all the doctors listed, but it was under no duty to do so.

■ What were the "contractual provisions agreed to" in this application? First, that the answers were true, full and complete. Secondly, that "no agent has authority to waive the answer to any question in this application, to waive a condition applicable to any insurance coverage resulting from this application or any of the company's rights or requirements with respect to this application, to *modify* this application *or to bind the company* by making any promise or representation or *by giving or receiving any information*." (Emphasis supplied).

"An agent can only bind his principal within the scope of his agency, and the principal will not be bound by the acts of an agent beyond the scope of his authority, where the person dealing with the agent had notice of such limitation." *State Farm Mut. Auto. Ins. Co. v. Cates,* 81 Ga. App. 141 (1) (58 SE2d 216). "[A] principal is not put on notice of the unauthorized act of an agent by the mere knowledge of the agent of the acts he himself has done in excess of his authority." *Newton v. Gulf Life Ins. Co.,* 55 Ga. App. 330, 332 (190 SE 69). When there is notice of the limitation of the agent's authority "[a] principal is not bound or affected by the unauthorized acts of a special agent with limited powers, unless he ratifies the same." *Phoenix Ins. Co. v. Gray,* 107 Ga. 110 (4) (32 SE 948). Nor can a special agent, or one with limited authority, by his own declarations enlarge his authority. *Mapp v. Phillips,* 32 Ga. 72. "The stipulation in the signed application limiting the powers of agents, medical examiners and other persons, coupled with other words in the policy, were sufficient to charge the applicant with notice that she was dealing with a special agent with limited powers." *Davis v. Metropolitan Life Ins. Co.,* 161 Ga. 568 (2) (131 SE 490). "Whoever deals with an agent with full notice of the extent of his authority, must determine at his own risk and peril whether particular acts are within that authority." *Claflin & Co. v. Continental Jersey Works,* 85 Ga. 27 (3b) (11

SE 721). "In special agencies for a particular purpose, persons dealing with the agent should examine his authority." *Code § 4-301.* "An insurance company may limit the power of its agent, and when notice that the agent's power is limited is brought home to the insured in such manner as would put a prudent man on his guard, the insured relies at his peril on any act of the agent in excess of his power. The insured is bound by plain and unambiguous limitations upon the power of the agent contained in his policy." *Reliance Life Ins. Co. v. Hightower,* 148 Ga. 843 (98 SE 469). Accord: *New York Life Ins. Co. v. Patten,* 151 Ga. 185 (106 SE 183). And see particularly *Davis v. Metropolitan Life Ins. Co.,* 161 Ga. 568 (1) (131 SE 490).

■ This notice of limitation as to the agent's authority was carried in the application, above the applicant's signature, and the application is attached to the policy, although *Code Ann. § 56-2502* only requires that it be attached to certain life insurance policies.

The effect of attaching the application to the policy, however, is to make it a part of the contract so that *a showing of falsity and materiality is all that is required. Jefferson Standard Life Ins. Co. v. Henderson,* 37 Ga. App. 704, 706, supra; *Preston v. National Life &c. Ins. Co.,* 196 Ga. 217, supra; *National Life &c. Ins. Co. v. Gordon,* 183 Ga. 577, supra. It has been held that where the applicant knew of the falsity, that it was made with a view of procuring insurance, and the company had no notice of its falsity but acted upon it to its injury, an intent to deceive will be conclusively presumed, although the applicant may not really have so intended. *Northwestern Life Ins. Co. v. Montgomery,* 116 Ga. 799 (2), supra.

"If the policy was based upon an application that was attached to and made a part of it . . . and was procured by a false statement or representation in such application, as a result of which the risk was increased, a recovery on the policy could be defeated on such ground, and could be so defeated whether the statement made was in good faith or fraudulently." *Preston v. National Life &c. Ins. Co.,* 196 Ga. 217 (2), supra. To the same effect, both as to the limitation of the agent's

authority and as to the misrepresentation which increases the risk: *Curry v. Washington Nat. Ins. Co.*, 54 Ga. App. 590, supra; *Gabriles v. Sun Life Assurance Co. of Canada*, 70 Ga. App. 6 (27 SE2d 111). The limitation on the agent's authority dates from the date of the application. *National Life &c. Co. v. Hullender*, 86 Ga. App. 438, supra. The insured is bound by the plain and unambiguous limitations upon the power of the agent as contained in the application. *Reliance Life Ins. Co. v. Hightower*, 148 Ga. 843, supra. The limitation here is of that category.

The conflict in the testimony of the insured and the agent as to what took place upon the filling out of the application is immaterial. "The writing being unambiguous, parol evidence as to what was said by the parties at the time it was executed will not be admitted to vary or alter the terms of the writing." *Wheeler v. Fidelity & Casualty Co.*, 129 Ga. 237, 240 (58 SE 709); *Fowler v. Preferred Accident Ins. Co.*, 100 Ga. 330, 331 (28 SE 398); *Newark Fire Ins. Co. v. Smith*, 176 Ga. 91 (167 SE 79, 85 ALR 1330); *Mitchiner v. Union Central Life Ins. Co.*, 185 Ga. 194, 195 (194 SE 530); *Fowler v. Liberty National Life Ins. Co.*, 73 Ga. App. 765, 770 (38 SE2d 60). "The court did not err in rejecting parol evidence offered for the purpose of showing that the agent of the company had waived the terms of the policy in respect to additional insurance." *Peoples Bank v. Ins. Co. of North America*, 146 Ga. 514, 518 (91 SE 684, LRA 1917D 868. Even if what the insured says be true, he was on notice of the agent's limited authority and the company cannot be bound by the attempt to modify the requirements for information in the application. The answers given were admittedly false — for they were not full and complete and did not give the true picture which he now testifies to. They were material such as to enhance the risk insured against and serve to void the policy.

■ As to whether the company relied upon the answers made to the questions in the application, this matter is foreclosed against the applicant when, as here, the application was attached to and made *a part of the contract*. In this posture the parties have contracted on that basis, and it is presumed that

the company relied upon the truthfulness and completeness of the answers, — otherwise we should be holding that they contracted on some basis not appearing and would be placed in the position of rewriting the contract. "It is the duty of courts to construe and enforce contracts as made, and not to make them for the parties." *Carr v. L. & N. R. Co.*, 141 Ga. 219, 222 (80 SE 716). Accord: *Gray v. Aiken*, 205 Ga. 649, 652 (54 SE2d 587); *Wolverine Ins. Co. v. Jack Jordan, Inc.*, 213 Ga. 299, 303 (99 SE2d 95). "We are not at liberty to revise while professing to construe." Sun Printing &c. Assn. v. Remington Paper &c. Co., 235 N. Y. 338, 346 (139 NE 470). "Where an applicant . . . covenants in his application that the statements [therein made] . . . are true, and these statements are made a part of the contract of insurance and form the basis of such contract, any variation in any of them, which is material, whereby the nature or extent or character of the risk is changed, will avoid the policy, whether the statement was made in good faith or wilfully or fraudulently." *Supreme Conclave Knights of Damon v. Wood*, 120 Ga. 328 (1) (47 SE 940). Where the application is attached to and made a part of the policy it "must stand or fall as a part of the policy, and if the application falls so does the policy, for the *insured is committed to the representations set forth in the application.*" (Citations). (Emphasis supplied). *Mutual Benefit Health &c. Assn. v. Marsh*, 60 Ga. App. 431, 437, supra. And a showing of falsity and materiality is all that is required. *Jefferson Standard Life Ins. Co. v. Henderson*, 37 Ga. App. 704, 706, supra.

The suggestion that opinion evidence from experts may be needed to show materiality of the misrepresentations, and thus that a summary judgment could not be granted, is not meritorious for two reasons; first, we hold that the misrepresentations were material as a matter of law, and thus no opinion evidence is needed; and secondly, even if it were, that would not be the *sole* basis for a finding of materiality. "[O]n opinion evidence *alone,* a summary judgment is not demanded as a matter of law." *Ginn v. Morgan*, 225 Ga. 192, 193 (167 SE2d 393). (Emphasis supplied).

5. A reversal is required under our recent holding in *Beale v. Life & Cas. Ins. Co. of Tenn.*, 113 Ga. App. 506 (148 SE2d 474), and by similar holdings found in *Supreme Conclave Knights of Damon v. Wood*, 120 Ga. 328, supra; *Northwestern Mut. Life Ins. Co. v. Montgomery*, 116 Ga. 799, supra; *New York Life Ins. Co. v. Patten*, 151 Ga. 185, supra; *New York Life Ins. Co. v. Hollis*, 177 Ga. 805, supra; *Vaughn v. National Life &c. Ins. Co.*, 189 Ga. 121, supra; *National Life &c. Ins. Co. v. Gordon*, 183 Ga. 577, supra; *Preston v. National Life &c. Ins. Co.*, 196 Ga. 217, supra; *Empire Life Ins. Co. v. Jones*, 14 Ga. App. 647 (2), supra; *Life Ins. Co. of Va. v. Pate*, 23 Ga. App. 232, supra; *Metropolitan Life Ins. Co. v. Shaw*, 30 Ga. App 97, supra; *Puckett v. Metropolitan Life Ins. Co.*, 32 Ga. App. 263, supra; *Sovereign Camp of the W.O.W. v. Parker*, 36 Ga. App. 695, supra; *Jefferson Standard Life Ins. Co. v. Henderson*, 37 Ga. App. 704, supra; *Thompson v. Metropolitan Life Ins. Co.*, 45 Ga. App. 90 (163 SE 527); *Lee v. All States Life Ins. Co.*, 49 Ga. App. 718, supra; *National Life &c. Ins. Co. v. Strother*, 53 Ga. App. 241, supra; *National Life &c. Ins. Co. v. Harris*, 64 Ga. App. 136 (12 SE2d 419); *Metropolitan Life Ins. Co. v. Cridelle*, 68 Ga. App. 353 (22 SE2d 771); and many others.

*Judgment reversed. Jordan, P. J., Hall, P. J., Quillian and Whitman, JJ., concur. Bell, C. J., Pannell, Deen and Evans, JJ., dissent.*

DEEN, Judge, dissenting. It is perfectly obvious that in the absence of any limitation on the authority of the insurance agent contained in the application a jury question would be presented under the evidence whether the applicant made full disclosure of his wife's eye condition to the agent and whether the latter in writing up the application told the applicant it contained the information required. "The actual knowledge of an insurance agent, like that of any other agent, pertaining to facts concerning matters within the scope of his agency is imputable as actual knowledge to his principal. What the agent knows within the scope of his agency, the principal knows." *Reserve Life Ins. Co. v. Ayers*, 217 Ga. 206 (3a) (121 SE2d 649).

To warrant summary judgment for the defendant there must be no room for controversy; it must be shown that the plaintiff could not recover under any discernible circumstances. *Watkins v. Nationwide Mut. Fire Ins. Co.*, 113 Ga. App. 801, 802 (149 SE2d 749).

The only issue here is whether the limitation on the agent's authority as set out in the majority opinion is sufficient to block plaintiff from urging an estoppel based on the knowledge and acts of the defendant's agent because any omission of pertinent information from the application was, under plaintiff's evidence, solely attributable to the defendant's agent. It was the defendant's agent who filled out plaintiff's application, and defendant's agent who told plaintiff that what the insurance company wanted on the application concerning the eye condition was date of the last eye examination and name and address of the examining doctor. It was defendant's agent who entered these facts, and defendant's agent who omitted the names of prior doctors and prior treatment. The applicant signed an authorization for the company to obtain information from the doctors. If Dr. Fair had been contacted, as two other doctors listed on the application in fact were contacted by the insurer, the company would have obtained from Dr. Fair all the information concerning the eye condition, including prior treatment, names of other physicians involved, etc. Dr. Fair was the doctor in charge of plaintiff's wife's eye case, had all pertinent history on its development, and had treated her for the past two years.

The part of the application form in dispute, which was printed up by the defendant and filled in by the defendant's agent, looks like this: (See page 636)

Obviously, any further information would have to be put on another sheet of paper, and defendant's agent said he had filled in hundreds of applications and never used a second sheet of paper. The average applicant for insurance who is assured by the insurer's agent that what the insurer wants to know about a stated disability is the name of the present doctor and last visit is going to believe that agent, especially where the insurer itself prepares a form that includes no room for further information,

**2.** Have you or the person, if any, named in Question 1., Part II,

a. at any time been treated for or been told you or such person had trouble with any of the following: heart, high blood pressure, lungs, kidneys, urinary system, stomach, intestines, tumors, cancer, diabetes, back or joints, or any nervous disorders? .......... Yes ☒ No ☐

b. been in any hospital or other institution for observation, rest, diagnosis or treatment, during the past five years? .......... ☒ ☐

c. been examined by, or consulted a physician during the past five years? .......... ☒ ☐

d. any known physical impairments, deformities, or ill health not covered by the answers to 2., a., through c., of Part II? .......... ☒ ☐

e. ever been declined or postponed for life or health insurance, or had a policy rated up, waivered or issued for a smaller amount than applied for? .......... ☐ ☒

**3. a.** If any part of Question 2., Part II, is answered "Yes," what are the following details?

| Answer refers to | | Condition, Details and | Duration of | Complete Recovery | | Names and Addresses of |
|---|---|---|---|---|---|---|
| Proposed Insured | Wife (Husband) | Number of Attacks (if operated, so state) | Disability | Month | Year | Physicians, Hospitals and other Institutions |
| ☒ | | 1 2 3 4 5 C Appendectomy | 10 day | Dec. | 67 | white |
| | ☒ | 2 B Child Birth | day, twell, May 64 - Mar 67 | | | |
| | ☒ | 2 C Routine Physical | | | 67 | |
| | ☒ | 2 C Eye Check up. | | Dec. | 67 | |

and where the information given, together with the right to contact the doctor, makes *all* information available to the insurer for the asking.

*There was no untrue statement* on this application. Was it "complete?" The agent filed it in and told the applicant that it was. But the agent could not "Waive the answer to any question . . . waive a condition applicable to coverage . . . modify this application" or bind the company by "making any promise or representation or by giving or receiving any information." The agent did not attempt to get the applicant not to answer any question. He did not attempt to change coverage conditions. He made no promise except that "in the event the policy came back from the company without a waiver deponent and his wife would be fully covered." What about giving and receiving information? If the agent could not give or receive *any* information there would be no point in sending him out to talk to prospects. The words must be given some reasonable interpretation other than that an insurance agent is a deaf-mute. "Complete" means "possessing all necessary parts, items, components or elements." Webster, Unabridged Dictionary. I think all "necessary" information was included here because had the company used the information given, all other facts would have been available to it.

The majority opinion puts the burden on an applicant for insurance to guess at his peril what information the company will regard as "complete" for its purposes, and in making the decision he must disregard the construction of the application given him by the insurer's agent. If he listens to the agent's construction of the meaning of the application, or if he guesses wrong, the policy is void. In my opinion this places an undue burden on the insurance-buying public, and opens more doors to fraud than it closes.

I am authorized to state that Chief Judge Bell and Judges Pannell and Evans agree with this dissent.